Lawrence ROTH et al.,
Plaintiffs-Appellees,

v.

BANK OF THE COMMONWEALTH,
Defendant-Appellant.

No. 77–1539.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1977.

Decided Sept. 1, 1978.

Sheldon S. Toll, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for defendant-appellant.

Russell J. Martin, Berkey, Erickson, Rentrop & Martin, Bloomfield Hills, Mich., for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, and WEICK and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

The principal and, we hold, controlling issue in this appeal is whether the Anti-Injunction Act, 28 U.S.C. § 2283 (1976), prevents a federal district court from enjoining the prosecution by the federal court defendant of *in personam* state actions where those actions were commenced after the institution of the federal suit but before the preliminary injunction was issued and where it is held that none of the three express exceptions in the Anti-Injunction Act applies. In granting the preliminary injunctive relief, the trial judge relied primarily upon *Barancik v. Investors Funding Corp.*, 489 F.2d 933 (7th Cir. 1973). We decline to follow *Barancik* and accordingly reverse.

The individual plaintiffs in the district court action were purchasers of certain investment contracts for the ownership and maintenance of polled Hereford cattle from the defendant Calderone-Curran Ranches, Inc. ("the ranch"). Between August 1970 and late 1973 investments in the cattle were

publicly offered by the ranch pursuant to four separate registrations with the Securities and Exchange Commission and accompanying prospectuses. The four offerings were similar in nature except that the cost of the cattle and maintenance charges for the animals varied under each investment contract. Under the investment scheme the notes to the ranch, which were themselves secured by the animals purchased, were in turn pledged or assigned to the defendant Bank of the Commonwealth ("the bank") by the ranch as collateral for substantial loans advanced by the bank to the ranch between 1969 and 1973.

The ranch filed a petition for an arrangement under Chapter XI of the Bankruptcy Act on August 8, 1975 and was adjudicated a bankrupt on August 5, 1976. The bank is the principal secured creditor of the ranch.

On July 23, 1976 the plaintiffs commenced an action in the District Court for the Eastern District of Michigan under the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa (1976), the Securities Act of 1934, 15 U.S.C. §§ 78a–78kk (1976), Rule 10b–5 of the Securities and Exchange Commission, and the security laws of the various states in which the securities were sold. Class relief for persons similarly situated was also sought.

Plaintiffs primarily contended that the numerous defendants, including the ranch and bank, utilized, in connection with the offer and sale of the investment contracts, misleading prospectuses that omitted material facts concerning the ranch's financial condition, its operating practices, and the activities of certain insiders and that they engaged in certain other fraudulent practices.

Plaintiffs alleged that the bank itself participated in the scheme by concealing the true financial state of the ranch in order to keep the plaintiffs paying on the notes. Plaintiffs claimed in their complaint that the bank knew or should have known about the material omissions of fact in the prospectuses and that its knowledge of and participation in the allegedly illicit financ-

ing scheme deprived it of its status as a holder in due course of the notes. The complaints requested compensatory and punitive damages and an injunction restraining the defendant bank and others from enforcing the notes against the investors.

On August 26, 1976 certain of the defendants, but not the bank, filed a motion to stay all proceedings instituted by the plaintiffs in view of the pendency of a similar action in the United States District Court for the Western District of New York.

This action was essentially identical except that the putative plaintiff class was somewhat smaller because the suit focused upon only one of the four groups of allegedly misleading prospectuses. On August 27, the plaintiffs themselves filed a motion for a preliminary injunction to restrain the bank from instituting any suits in state or federal courts to collect on the promissory notes connected with the litigation. Upon the bank's representation that it did not intend to initiate any suits for some time, that motion was adjourned from September to November 1, 1976. On September 23, the court granted the defendants' motion for a stay pending determination by the United States District Court for the Western District of New York of the companion case. The order did not, however, stay any contemplated actions by the bank for deficiency judgments on the promissory notes. The bank thereafter notified the court that it did not plan to initiate suits for some time beyond November 1, and upon the agreement of the parties, the hearing date for the preliminary injunction motion was postponed indefinitely.

In early March 1977, the plaintiffs, having been informed by the bank that collection suits would be initiated in the near future, sought an *ex parte* temporary restraining order against the institution of the suits, their basis for temporary relief being their perceived need to conduct discovery necessary to support their previous motion for a preliminary injunction.

The court denied this application but scheduled an in-chambers conference on

March 14, 1977. Plaintiffs do not dispute the bank's representation that it informed both the court and opposing counsel during that conference that it would commence suits unless immediately restrained. However, the court denied injunctive relief at that time because the bank suggested that the previous stay order precluded such relief. It granted the parties two weeks within which to file briefs concerning this issue and the possible application of the Anti-Injunction Act and scheduled a second hearing for March 28, 1977. After the chambers conference in early March, but before the adjourned hearing on March 28, the bank commenced approximately 70 suits in state and federal courts for the balances due on the numerous promissory notes.

The scheduled hearing was held on March 28 and on April 4, 1977 the court issued a temporary restraining order enjoining the bank from proceeding in the state court actions. On July 8, 1977 the district court issued a memorandum opinion which was followed by a preliminary injunction prohibiting the defendant bank from prosecuting any separate civil actions against the named plaintiffs for recovery of deficiencies on any of the notes involved in the securities suit. This appeal followed.

The trial judge applied a balancing test in determining whether the traditional requirements for the issuance of preliminary injunctive relief had been met. With respect to the likelihood of success on the merits, the court observed:

> While plaintiffs have not shown that they are certain to prevail on the merits of their defenses in the state court actions, or even that they are likely to prevail in such actions, they have established that the issues they have raised are "fair ground for litigation," in light of the other considerations previously adverted to in this Opinion. This Court concludes then that the balance of equities clearly

favors the issuance of the injunction prayed for.[1]

As to the claim that injunctive relief was barred by the Anti-Injunction Act, the district judge adopted the rationale of the Seventh Circuit in *Barancik v. Investors Funding Corp., supra.* In the alternative he held that even if Section 2283 were applicable to such an injunction it would not act as a bar because the restraining order was necessary "in aid of this court's jurisdiction." The reason assigned for granting the temporary restraining order was a desire to avoid duplicative proceedings and inconsistent judicial rulings which he concluded might result by permitting the federal action to proceed independently of the state actions commenced by the bank:

> To allow the defendant bank to continue in its efforts to prosecute the defaults on these promissory notes would compel the plaintiffs to raise their federal securities law action as a defense and the question of defendant's liability under the Securities Acts of 1933 and 1934 would be dispersed throughout the state court system. This would essentially nullify the underlying purpose of this Court's order.

In granting preliminary relief, the court further observed:

> Plaintiffs argue that having to defend the numerous state actions contemplated by the Bank would inflict irreparable harm upon them. If the state courts suits were permitted to proceed, defense counsel in those cases (individuals representing plaintiffs here) would be forced to engage in time-consuming and costly duplication of discovery. In view of the similarity of legal issues that would arise in each of the suits (assuming that each maker would raise securities issues as a defense to the notes), much of the discovery would be clearly multiplicitous and duplicitous. Apart from the infliction of significant time and monetary ex-

---

1. The district court also examined three other standard considerations: (1) whether the plaintiffs would suffer irreparable injury in the absence of an injunction; (2) whether there would be overriding harm to the plaintiffs relative to the defendant; and (3) whether the public interest would be furthered by issuance of the injunction.

pense on the plaintiffs if they are compelled to defend individual actions in state courts, the Court sees numerous other difficulties that are not remediable by money damages. Stays already issued by this Court and the Bankruptcy Court significantly complicate the issue. As defendants in the state courts, plaintiffs here would necessarily have to engage in the kind of discovery currently prohibited by the various stay orders. It might well defeat the purpose of those stays to permit such discovery, yet it is clearly necessary to a proper defense. Affirmative relief for violations of the Securities Exchange Act of 1934 is not available in state court, thus duplicitous litigation is unavoidable. 15 U.S.C. § 78aa. See *Clark v. Watchie*, 513 F.2d 994, 997 (9th Cir. 1975), *cert. denied*, 423 U.S. 841, [96 S.Ct. 72, 46 L.Ed.2d 60] (1975).

Most significantly, in the Court's view, the numerous state actions which would go forward in the absence of the requested injunction would lead to an unacceptable likelihood of inconsistent judgments. In view of the ability of the plaintiffs to raise violations of the securities Acts defensively in state court actions on the note, it is clear that many of the same issues of fact and law that will be controlling in this litigation, will be determinative in the state suits. Indeed it is clear from the briefs of the parties and their positions at oral argument, that the crux of this dispute—whether the Bank is entitled to holder-in-due-course status—would necessarily be litigated in state courts. Inconsistent judgments in numerous state courts would severely complicate the efficient conduct of this litigation. Even were this possibility not to materialize, the state courts would effectively pre-empt the ability of this Court, as a federal forum, to rule in the first

instance on important questions of federal law. (footnote omitted).

■ In placing the issues in their proper perspective, it is important to keep in mind that although plaintiffs' complaint had sought an injunction against defendants to prevent them from enforcing collection of the notes, no injunction had been entered at the time the state and federal suits were commenced. It is equally important to note that while a request for a temporary restraining order was pending at the time the suits were started, the trial judge had already declined to grant the same although he knew that the bank intended to commence suit on the notes. We are not, therefore, presented with a circumstance in which the bank misled either the plaintiffs or the court as to its intention or lulled them into a sense of security while it avoided the potential threat of injunctive relief. When finally action was taken, however, the district judge was obliged to enjoin the bank not merely from commencing suit but from prosecuting state actions which had already been commenced.

The Anti-Injunction Act, 28 U.S.C. § 2283 (1976), provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Federal courts have quite consistently held that the Act does not preclude a federal court from enjoining parties from commencing state proceedings which have not already been begun at the time the injunction is issued.[2] In such cases, it has sometimes been held that the Act was not applicable at all and that therefore its three express exceptions need not be considered, the propriety of the issuance of the injunc-

---

**2.** *E. g., Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Response of Carolina v. Leasco Response, Inc.*, 498 F.2d 314, 317 n. 4 (5th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974); *Honey v. Goodman*, 432 F.2d 333, 343 (6th Cir. 1970); *Union Oil Co. v. Minier*, 437

F.2d 408, 411 (9th Cir. 1970); *United Steelworkers of America v. Bagwell*, 383 F.2d 492, 495 n. 12 (4th Cir. 1967); 1A Moore's Federal Practice & Procedure Pt. 2, ' 0.229[1] at 2636 (1977). *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 635 n. 6, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977).

tion being measured by traditional equitable principles. The issue becomes considerably less certain, however, when state court proceedings have been initiated after the commencement of the federal proceedings and where, as here, injunctive relief has been sought but not granted at the time the state actions were commenced.

In *Barancik v. Investors Funding Corp.*, *supra*, which also involved a securities fraud action, the Seventh Circuit held that if the state court proceedings had not been commenced by the time the federal court's injunctive powers were "invoked," Section 2283 was inapplicable and did not bar an injunction restraining those proceedings, notwithstanding the literal language of the statute. The court's powers were "invoked" when the actual application in the federal court for injunctive relief was made, which would not necessarily be the date the complaint was filed. Citing *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the then Circuit Judge Stevens reasoned:

> During its process of deliberation, the court, not the defendant, should have the ultimate power to determine the scope of its authority. It may be argued that the statute requires the federal court to protect its authority by promptly issuing a temporary restraining order. But such a construction might encourage the liberal granting of the kind of protective orders the statute was intended to prevent. Moreover,. it might require the court to take action without notice to the opposing party lest the court's power be defeated before it can rule with deliberation.

489 F.2d at 937–38 (footnote omitted).

As compelling as *Barancik's* logic may be otherwise, its difficulty is that, unless the exercise of a federal court's powers is within one of the express exceptions of the Act, the interpretation runs afoul of the language of the Act and of clear authority which insists that the language be read literally.

In *United States v. United Mine Workers*, *supra*, the Supreme Court held that even if the Norris-LaGuardia Act, ch. 90, 47 Stat. 70 (1932), *as amended*, 29 U.S.C. §§ 101–115 (1976), was interpreted to prevent the issuance of an anti-strike injunction, the district court possessed the power to preserve existing conditions while it was determining its own authority to grant such injunctive relief. The decision does not stand for the proposition that a federal court's possession of power to maintain the status quo while deciding its own authority is itself an adequate basis for granting injunctive relief beyond the period of deliberation, in spite of the bar of the Norris-LaGuardia Act. *Cf. United Mine Workers*, 330 U.S. at 295, 67 S.Ct. 677.

As sympathetic as we might be toward Judge Stevens' argument that any other rule would tempt the trial judge to act precipitously by promptly issuing a temporary restraining order in order to preserve his ultimate authority, this is an inevitable characteristic of the dynamics of the equitable injunctive power and of its exercise. And there is some appeal also in the argument that the rule in *Barancik* has "the salutary advantage of discouraging the unseemly race to the state courthouse which occurred here while the federal court had under consideration a motion for a status quo order." *Barancik, supra*, 489 F.2d at 935 n. 5, quoting the opinion of the district court. Some of the unseemliness may be removed by application of the *Barancik* rule, it is true, but not the race, for as observed by Judge Stevens:

> The timing of a litigant's resort to the state court is significant. Timing may affect the exercise of a federal judge's discretion; it may also affect his power.

489 F.2d at 936.

As long as the commencement of state proceedings in any way affects or triggers the operation of the anti-injunction statute, a race is assured, unseemly or not. What attorney worth his salt, learning that federal proceedings were about to start, would fail to race to the state courthouse before-

hand if it suited his client's interests to do so? *Barancik* does not eliminate the race; it merely moves the finish line.

In summary, our rationale for rejecting the guidance of *Barancik* is straightforward. However meritorious the reasons, the fact is that the federal district court enjoined the state court proceedings which had already been commenced when the injunction was issued. As we shall demonstrate later, none of the express exceptions under the statute applies. The Supreme Court has repeatedly ruled that the ban is absolute and that the language is to be taken literally. In the face of such authority, the rationale of *Barancik* amounts to a whittling away of the statute and a judicial improvisation which the Supreme Court has expressly abjured.

In no uncertain terms the Supreme Court in *Atlantic Coast Line R.R. Co. v. Locomotive Engineers*, 398 U.S. 281, 286–87, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970), recognized the absolute character of the Anti-Injunction Act:

> On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. The respondents here have intimated that the Act only establishes a "principle of comity," not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention. In 1955 when this Court interpreted this statute, it stated: "This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 515–516, [75 S.Ct. 452, 455, 99 L.Ed. 600] (1955). Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.

Mr. Justice Black's concluding words in *Atlantic Coast Line* are particularly applicable here:

> This case is by no means an easy one. The arguments in support of the union's contentions are not insubstantial. But whatever doubts we may have are strongly affected by the general prohibition of § 2283. Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.

398 U.S. at 296–97, 90 S.Ct. at 1748.

These same principles were repeated forcefully by Mr. Justice Stewart in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Analyzing whether Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, was within the "expressly authorized" exception of the statute, he observed:

> It follows, in the present context, that if 42 U.S.C. § 1983 is not within the "expressly authorized" exception of the anti-injunction statute, then a federal equity court is wholly without power to grant any relief in a § 1983 suit seeking to stay

a state court proceeding. In short, if a § 1983 action is not an "expressly authorized" statutory exception, the anti-injunction law absolutely prohibits in such an action all federal equitable intervention in a pending state court proceeding, whether civil or criminal, and regardless of how extraordinary the particular circumstances may be.

407 U.S. at 229, 92 S.Ct. at 2155.

More recently Mr. Justice Rehnquist in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), emphasized the continuing force of *Atlantic Coast Line* and *Mitchum v. Foster*:

The origins and development of the present Act, and of the statutes which preceded it, have been amply described in our prior opinions and need not be restated here. The most recent of these opinions are *Mitchum v. Foster*, 407 U.S. 225, [92 S.Ct. 2115, 32 L.Ed.2d 705] (1972), and *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, [90 S.Ct. 1739, 26 L.Ed.2d 234] (1970). Suffice it to say that the Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act. The Act's purpose is to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court. *Oklahoma Packing Co. v. Oklahoma Gas & Electric Co.*, 309 U.S. 4, 9, [60 S.Ct. 215, 218, 84 L.Ed. 447] (1940). Respondents' principal contention is that, as the Court of Appeals held, § 16 of the Clayton Act, which authorizes a private action to redress violations of the antitrust laws, comes within the "expressly authorized" exception to § 2283.

We test this proposition mindful of our admonition that:

"[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R. Co., supra*, [398 U.S.] at 297, [90 S.Ct. 1739].

This cautious approach is mandated by the "explicit wording of § 2283" and the "fundamental principle of a dual system of courts." *Ibid.* We have no occasion to construe the section more broadly:

"[It is] clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation." *Clothing Workers v. Richman Bros. Co.*, 348 U.S. 511, 514, [75 S.Ct. 452, 454, 99 L.Ed. 600] (1955).

433 U.S. at 630–31, 97 S.Ct. at 2886.

In conclusion we are led inevitably to the conviction that the logic of *Barancik* (which in effect says that state proceedings which are commenced in fact are not commenced in law if commenced after the time the judicial power of the federal court was invoked) amounts to precisely that type of judicial improvisation which the Supreme Court has warned us to avoid. Likewise, we are unable to understand the logic of *Barancik* which seems to say that even though the statute is mandatory, the fact of the pendency of state court proceedings is not binding, although it is an important factor in the court's determination of whether to exercise its equitable powers. 489 F.2d at 937–38. This argument was expressly rejected in *Atlantic Coast Line*:

The respondents here have intimated that the Act only establishes a "principle of comity," not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention.

398 U.S. at 286–87, 90 S.Ct. at 1743.

If, therefore, the injunction is to be upheld, it must be on the basis that the district court's authority derives from one of the three exceptions in the statute.

We agree with Judge Stevens in *Barancik* that "[q]uite clearly, the injunction was

not 'expressly authorized by Act of Congress'." 489 F.2d at 936. The plaintiffs make no contention that any provision of the Securities Act of 1933 or the Securities Exchange Act of 1934 expressly authorizes a federal court to stay proceedings in a state court.

The trial judge here, however, held that the injunction was "necessary in aid of its jurisdiction." What authority there is on the question strongly suggests that this basis must fail also. In holding the injunction "necessary in aid of its jurisdiction," the district court here noted that the institution of the state suits would "essentially nullify" its earlier order staying action pending decision in the class action commenced in the Western District of New York. This ruling appears to be incorrect.

First, it is apparent that the stay order was never intended to prevent the defendant bank from initiating its state suits and the district judge acknowledged that he expressly had declined to grant *ex parte* temporary restraining order relief, even possessed of the knowledge that the bank intended to start suit. Nothing in the earlier stay order can be construed as directed to restraining the defendant bank from commencing the state actions.[3]

Second, the court commented that the state suits nullified the "purpose" of the stay. The Supreme Court has narrowly interpreted the "in aid of jurisdiction" exception, and a pending state suit must truly interfere with the federal court's jurisdiction. As the defendant bank correctly points out, the Supreme Court reaffirmed in *Vendo Co.* its earlier holdings that a simultaneous *in personam* state action does not interfere with the jurisdiction of a fed-

eral court in a suit involving the same subject matter.

In *Toucey v. New York Life Ins. Co.*, 314 U.S. [118], at 134–135, [62 S.Ct. 139, 144, 86 L.Ed. 100 (1945)], we acknowledged the existence of a historical exception to the Anti-Injunction Act in cases where the federal court has obtained jurisdiction over *res*, prior to the state-court action. Although the "necessary in aid of" exception to § 2283 may be fairly read as incorporating this historical *in rem* exception, see C. Wright, Federal Courts, § 47, p. 204 (3d ed. 1976), the federal and state actions here are simply *in personam*. The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance. We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court; as we stated in *Kline v. Burke Construction Co.*, 260 U.S. 226, [43 S.Ct. 79, 67 L.Ed. 226] (1922):

"[A]n action brought to enforce [a personal liability] *does not tend to impair or defeat the jurisdiction* of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res adjudicata* . . . ." *Id.*, at 230, [43 S.Ct. 79 at 81] (emphasis added).

433 U.S. at 641–42, 97 S.Ct. at 2892.

---

3. The district court observed in an opinion accompanying the stay order:

Some consideration should be given, however, to the issue raised by plaintiffs regarding the alleged interpretation [sic: intention] of the defendant Bank of the Commonwealth to institute suits against the individual plaintiffs for deficiency judgments. Certainly the plaintiffs should not be debarred from seeking appropriate injunctive relief should the

occasion arise. This stage, then, will not operate to prevent the plaintiffs from seeking such relief by proper motion.

. . . . .

IT IS, THEREFORE, THE ORDER of the Court that, with the exception of the Bank of Commonwealth issue mentioned above, the proceedings herein be stayed. . . .

■ The plaintiffs' argument in their brief that the district court's ruling can also be sustained on the basis that it comes within the express exception for stays to "protect or effectuate its judgments" is equally without merit. As mentioned earlier, the stay order directed to the proceedings in the Western District of New York had nothing to do with the stay against any suits the defendants might start in state courts. Thus, since this was not the object of the order, an injunction could not have protected it even were it construed as a "judgment" within the meaning of Section 2283.[4] In any event, we recently noted that this exception affords federal courts the power to "enjoin the relitigation in state court of issues that federal courts have *fully and finally adjudicated." Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052, 1061 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977), quoting *International Association of Machinists & Aerospace Workers v. Nix,* 512 F.2d 125 (5th Cir. 1975). The stay order here did not finally resolve any issue relating to the merits of the case. It was merely an interlocutory procedural decision, which even expressly refrained from dealing with the threatened state court actions. *See also United States v. Ford Motor Co.,* 522 F.2d 962 (6th Cir. 1975).

■ The foregoing ruling does not, however, dispose of the entire appeal in this case for the injunction enjoins not only the state actions commenced by the bank, but "any separate civil actions against any of the named plaintiffs for recovery of deficiencies on any of the promissory notes involved in this lawsuit." From the record it appears that the bank commenced an undetermined number of suits in federal district courts where diversity jurisdiction could be established between the bank and the obligor of the particular note. While there is some authority to the effect that the Anti-Injunction Act extends in its scope to preclude enjoining actions brought in state courts but removed to federal courts on the basis of diversity jurisdiction, there is no indication in the record here that any federal case has in fact been removed from a state court. We hold that Section 2283 does not prohibit an injunction restraining proceedings commenced in federal courts under diversity jurisdiction.[5]

As to those actions commenced in federal district court, therefore, we must address the issue raised by appellants of the propriety of the standard employed by the district court in granting equitable relief.

■ The district judge expressly declined to make a determination that the plaintiffs were "likely to prevail" or had a "strong probability of success" on the merits. Essentially the district court applied the oft-quoted test of Judge Jerome Frank in *Ham-*

---

4. It is questionable whether a non-appealable interlocutory order is a "judgment" within the meaning of this exception to Section 2283. *See* C. Wright, Federal Courts § 47 at 204 (3d ed. 1976).

5. The Fifth Circuit in *Carter v. Ogden Corp.,* 524 F.2d 74, 77 n. 11 (5th Cir. 1975), suggested that the Section 2283 bar encompasses proceedings in "the state court where the litigation commenced and the federal court on removal which under *Erie* sits as another state court in a diversity action." It vacated an injunction restraining an action removed to a federal district court, on the basis of the anti-injunction statute.

Two other circuits have held that Section 2283 does not prohibit an injunction against such a suit pending in federal court, where there is no claim that the action was improper-

ly removed, *Columbia Plaza Corp. v. Security National Bank,* 173 U.S.App.D.C. 403, 412 n. 64, 525 F.2d 620, 629 n. 64 (1975), or where the plaintiff has in some way forfeited its right to remand to state court on the ground of improper removal. *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896 (2d Cir. 1924) (forerunner of Section 2283 considered). On its facts the *Carter* case is consistent with these decisions, because there the Fifth Circuit noted that diversity jurisdiction might have been lacking which would still warrant a remand to state court.

Here, on the other hand, the parties' briefs suggest that any federal actions were initiated directly in federal courts, on the basis of diversity jurisdiction. At least under these circumstances, where the actions were never removed from state court, we conclude that Section 2283 has no application.

*ilton Watch Co. v. Benrus Watch Co.*, 206
F.2d 738 (2d Cir. 1953):

> To justify a temporary injunction it is
> not necessary that the plaintiff's right to
> a final decision, after a trial, be absolute-
> ly certain, wholly without doubt; if the
> other elements are present (*i. e.*, the bal-
> ance of hardships tips decidedly toward
> plaintiff), it will ordinarily be enough
> that the plaintiff has raised questions go-
> ing to the merits so serious, substantial,
> difficult and doubtful, as to make them a
> fair ground for litigation and thus for
> more deliberate investigation.

206 F.2d at 740 (footnote omitted). The
foregoing test has been cited with general
approval by our circuit in *Brandeis Machin-
ery & Supply Corp. v. Barber-Greene Co.*,
503 F.2d 503, 505 (6th Cir. 1974). *See also
American Federation of Musicians v. Stein*,
213 F.2d 679, 683 (6th Cir.), *cert. denied*, 348
U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687 (1954).
Plaintiffs also rely upon the decision of this
court in *SEC v. Senex Corp.*, 534 F.2d 1240
(6th Cir. 1976), wherein the court stated
that one element to be considered was the
"possibility of success on the merits." This
latter language received criticism by anoth-
er panel of the court in *Mason County
Medical Association v. Knebel*, 563 F.2d 256
(6th Cir. 1977). There, our court held that
an element which must be considered is
"[w]hether the plaintiffs have shown a
strong or substantial likelihood or probabili-
ty of success on the merits," commenting
that in its opinion our decision in *Senex*
used "unfortunate terminology" in refer-
ring to the "possibility" of success on the
merits. 563 F.2d at 261 n. 4.

With commendable candor, the trial
judge here avoided making too firm a judg-
ment on the potential outcome of the plain-
tiffs' fraud claim, either as a cause of action
in the district court or as a source of de-
fense to any state action on the notes by
the bank. It had to be apparent that the
factual circumstances of the controversy
were indeed complex and that the law was
far from certain, even if the facts them-
selves were finally clarified. He, therefore,
contented himself to hold that the plain-
tiffs had established that the issues are
"fair ground for litigation" and·that the
plaintiffs had raised "substantial questions"
concerning whether the bank had actual or
constructive notice of the defenses that
plaintiffs would assert in any action on the
notes, which might in turn defeat its status
as a holder in due course.

█ A conscientious trial judge, aware of
the need to suspend his final judgment until
all of the evidence is in, will necessarily be
reluctant to commit himself earlier on the
basis of only incomplete factual findings
and legal research. His experience tells
him that there is often a wide gap between
facts alleged and facts proved. Surely the
law should encourage that objectivity which
is the hallmark of a fair judge. A fixed
legal standard is not the essence of equity
jurisprudence and perhaps no better con-
trast can be found than the considerations
which guide us in this case. Thus, in deny-
ing the judge the power to enjoin state
proceedings here, we accede to the fixed
legal standard which Congress has imposed
in Section 2283. On the other hand, where
the district judge is not so barred by the
statutory prohibition, we believe that the
exercise of his discretion is the very essence
of his equity powers and we support it. To
those who might claim that there is an
inconsistency in the standards employed by
this circuit in its various decisions review-
ing the exercise of the trial court's prelimi-
nary injunctive powers, we believe that the
following quotation by the trial judge here
from an opinion of District Judge Feikens
in *Metropolitan Detroit Plumbing & Me-
chanical Contractors Association v. HEW*,
418 F.Supp. 585, 586 (E.D.Mich.1976), is
most appropriate:

> This apparent disparity in the wording
> of the standard merely reflects the cir-
> cumstance that no single factor is deter-
> minative as to the appropriateness of eq-
> uitable relief. In addition to assessing
> the likelihood of success on the merits,
> the court must consider the irreparability
> of any harm to the plaintiff, the balance

of injury as between the parties, and the impact of the ruling on the public interest. In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction. . . . It thus appears that the precise wording of the standard for the likelihood of success on the merits is not as important as a realistic appraisal of all the traditional factors weighed by a court of equity. A balancing is required, and not the mechanical application of a certain form of words.

We, therefore, hold that the trial judge did not err in the standards employed to exercise his general equitable powers in granting the preliminary injunction.

■ Additionally, we observe that the standards for restraining parallel litigation in other federal district courts have not traditionally required the more stringent test for granting a preliminary injunction in other contexts. As the Second Circuit stated in *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2nd Cir. 1961):

The bulk of authority supports the position that when a case is brought in one federal district court, and the case so brought embraces essentially the same transactions as those in a case pending in another federal district court, the latter court may enjoin the suitor from taking any further action in the prosecution of that case. This necessarily follows from the basic proposition that the first court to obtain jurisdiction of the parties and of the issues should have priority over a second court to do so . . . (citations omitted).

However, this is not a rigid rule and the decision still rests within the equitable discretion of the district court. *See Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Ashland Oil & Refin-*

ing Co. v. Federal Power Commission*, 421 F.2d 17 (6th Cir. 1970); *Urbain v. Knapp Brothers Manufacturing Co.*, 217 F.2d 810 (6th Cir. 1954). *See also Meeropol v. Nizer*, 505 F.2d 232, 235–37 (2d Cir. 1974); *Small v. Wageman*, 291 F.2d 734 (1st Cir. 1961); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941).[6]

■ Finally, the bank has complained that the district judge failed altogether to provide for any security as a condition to the issuance of the injunctive relief. Rule 65(c), Federal Rules of Civil Procedure, states:

**Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule.

No security was required and no determination by the district court was made on the issue one way or the other.

The bank maintains that the requirement of Rule 65 is mandatory, citing *Telex Corp. v. International Business Machines Corp.*, 464 F.2d 1025 (8th Cir. 1972); *Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257 (9th Cir. 1964), *cert. denied*, 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965); *Chatz v. Freeman*, 204 F.2d 764 (7th Cir. 1953); *Hopkins v. Wallin*, 179 F.2d 136 (3d Cir. 1949). At the same time, it acknowledges that in *Urbain v. Knapp Brothers Manufacturing Co.*, supra, our circuit held the rule to be only discretionary.

The bank urges that we review *Urbain*, especially since it is being restrained from

**6.** Whether the bank's claims on the promissory notes are properly compulsory counterclaims in either the Michigan or New York securities actions has not been briefed by the parties or

discussed by the district court. *See* Rule 13(a), Fed.R.Civ.P. Therefore, we decline to reach that issue.

pursuing its fight to collect the notes in the normal way and especially where the more relaxed standards of *Hamilton Watch* have been applied by the district judge. While we do not depart from the rule of *Urbain* that the requirement is discretionary, we believe it is inherent in the use of discretion that it be exercised and not neglected altogether. Thus we believe it was error for the judge, not necessarily to have failed to require a bond in any particular amount, but to have failed to exercise the discretion required of him by Rule 65(c) by expressly considering the question of requiring a bond. We do not in any way suggest that the bank is correct in urging that the bond with surety should be set in the full amount of the notes. Even assuming that the plaintiffs were ultimately to fail in their securities action, we are far from satisfied that any delay occasioned by the injunction will result in the bank's inability to enforce all or any number of the promissory notes. The bank's ability to pursue its individual claims in the instant lawsuit, at least against the named plaintiffs, argues against any serious inconvenience and monetary loss by the issuance of the injunction. Nevertheless these are matters which we believe are more properly left to the consideration of the trial judge and we leave them to him here. We also leave to the trial judge on remand the question of whether the injunction should stand as to any federal litigation in view of the fact that it must be vacated as to the state proceedings. This is a matter which does not appear to have been fully anticipated by the trial judge, nor is it adequately briefed before us now.

Our vacation of the injunction entered by the district court in no way impairs its right to grant any further injunctive relief not inconsistent with our holding herein.

Reversed and remanded for further proceedings not inconsistent with this opinion.