**COLUMBIA GAS TRANSMISSION CORPORATION, Plaintiff,**

v.

**AN EXCLUSIVE NATURAL GAS STORAGE EASEMENT IN the CLINTON SUBTERRANEAN GEOLOGICAL FORMATION BENEATH AN 80 ACRE TRACT IN RIPELY TOWNSHIP, HOLMES COUNTY, OHIO, et al., Defendants.**

No. C87-3348A.

United States District Court, N.D. Ohio, E.D.

June 21, 1988.

---

David Noble, Cleveland, Ohio, Carl W. Levander, Charleston, W.Va., for plaintiff.

M. Howard Petricoff, Vorys, Sater, Seymour & Pease, Columbus, Ohio, Thomas White, Pros. Atty., Millersburg, Ohio, for defendants.

### AMENDED ORDER GRANTING MOTION OF PLAINTIFF FOR PRELIMINARY INJUNCTION

DOWD, District Judge.

This action is brought under the provisions of the Natural Gas Act, 15 U.S.C. § 717 *et seq.* The plaintiff Columbia Gas Transmission Corp. ("Columbia") seeks to condemn the subject gas well ("the Hostettler well") as well as the Clinton Subterranean Geological Formation ("Clinton Formation") beneath the eighty acre tract of land where the Hostettler well is located. Columbia also seeks damages of two million dollars for the alleged conversion of Columbia storage gas by the defendant William Hill, who drilled and who operates the Hostettler well under an oil and gas production lease obtained from the defendant Guy Hostettler, who owns the real estate in question. The parties have stipulated that Columbia is a natural gas company within the meaning of the Natural Gas Act; that venue is properly laid in the Northern District of Ohio; and that Columbia holds a certificate of public convenience and necessity, issued by the Federal Energy Regulatory Commission ("FERC"), for Columbia's Holmes Storage Field. The parties have further stipulated that the real estate in question is within the certificated boundaries of what is known as the "pro-

tective area" of the Holmes Storage Field.[1]

At issue before the Court is Columbia's motion for preliminary injunction. Columbia seeks an order enjoining production from the Hostettler well pending the outcome of this action. Upon consideration of the briefs of the parties and the evidence presented at the hearing conducted by the Court on March 15 and 16, 1988, the Court concludes that Columbia's motion should be granted, but with the understanding that the Court will promptly entertain a motion by the defendants to dissolve the preliminary injunction if Columbia does not forthwith take action to reactivate its Holmes Storage Field.

## HISTORICAL BACKGROUND

The Hostettler well was drilled in 1976 and has been in operation since 1977. At that time, Columbia's FERC certificate encompassed only the area now known as the active storage area. It did not encompass, as it does today, the protective area. Although the well is located in what is now the protective area of the Holmes Storage Field, it is extremely close to the boundary of the active storage area.[2] Pursuant to Columbia's gas purchase policy at the time the well began production, Columbia entered into a contract with Mr. Hill to purchase the gas produced from the Hostetler well. However, Columbia believed from the outset that there was evidence indicating that the Hostettler well was in communication with Columbia's storage field and that the well was producing storage gas. Columbia accordingly began to take measures to preserve the integrity of its storage field.

Columbia's overall defensive tactic was to attempt to reduce the pressure in the storage area in order to reduce the amount of storage gas which could "leak," so to speak, into the Hostettler well. To this end, in 1977 Columbia decided not to inject storage gas into five of its Holmes storage wells which were the closest to the Hostettler well. Columbia repeated this action in 1980 and has not stored in these wells since then. In 1983, Columbia stopped storing in the entire southeastern portion of the storage area and drew down the pressure each year during winter withdrawal operations. In 1984, Columbia placed the ten wells nearest the Hostettler well on continuous low pressure withdrawal. The upshot of these measures was that by 1983 the Holmes Storage Field was virtually shut down as a storage facility.

Meanwhile, prior to 1986 there were apparently ongoing contacts between Hill and Columbia concerning the Hostettler well. Columbia has also been continually gathering data and monitoring the Hostettler well's production, with the permission of Mr. Hill. Columbia asserts that such testing conducted in 1984, 1985 and 1986 "established beyond any question that the well was producing storage gas." Plaintiff's Post-Hearing Brief (docket # 19) at p. 3.

Also during this time period, Columbia has been engaged in similar eminent domain litigation with other landowners. In 1985, in the case of *Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement, etc., et al.*, 578 F.Supp. 930 (N.D.Ohio 1983), *aff'd.* 776 F.2d 125 (6th Cir.1985) (*"Parrott"*), this Court was affirmed in its holding that Columbia could not condemn property outside of its certificated boundaries but that Columbia could acquire the right to condemn such property by obtaining an amended certificate which would enlarge the boundaries to include the property sought to be condemned.

Following the *Parrott* decision, in 1986 Columbia applied for and obtained an up-

---

**1.** It is helpful to envision the Holmes Storage Field as two concentric circles. The inner circle is the active storage area where gas reserves are held. Surrounding the inner circle is an outer ring or shield known as the "protective acreage." The chief function of the protective acreage is to ensure that the integrity of the active storage area is not violated.

**2.** Mr. Hill testified at the hearing that before drilling the well he checked with a Columbia representative and was advised that the proposed location was not within Columbia's storage field. Mr. Hill also testified that he chose the location of the well, and that the well was drilled as close to the corner of the property nearest to the active storage field as was legally permissible under Ohio law.

dated certificate from FERC. The amended certificate enlarged the boundaries of the Holmes Storage Field so that the Hostettler well is now located within the certificated boundaries of the protective area of the field. Then, following the *"Johnson"* case (*Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement, etc., et al.,* C85–661A (N.D.Ohio 1987)), in which the Court held that Columbia has the authority to condemn property within the protective area of a storage field, Columbia filed this action to condemn the Hostettler well property. Further, by way of the present motion for preliminary injunction, Columbia seeks to shut in the Hostettler well pending the outcome of the action.

## PRELIMINARY INJUNCTION STANDARD

■ Four factors must be considered in determining whether an injunction should be granted:

1. Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
2. Whether the plaintiff has shown irreparable injury;
3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and
4. Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977).

The four factors set out in *Mason County* may not be weighed mechanically in order to determine if the injunction should be issued. No single factor is determinative but rather, the Court should weigh each of the factors in light of the factual circumstances of the particular case. *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537–38 (6th Cir.1978), *cert. granted* 440 U.S. 944, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979), *cert. dismissed* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

■ In *Roth,* the Sixth Circuit held that where a strong showing of irreparable harm was made, the injunction could issue on a lesser showing of the likelihood of prevailing on the merits. *Id.* at 537–38. Therefore, in a case involving great irreparable harm, the injunction could issue on a showing that the plaintiff has raised questions which are "fair ground for litigation." *Id.* at 537. The *Roth* Court also indicated that the converse is true, i.e., that where the likelihood of prevailing on the merits is strong, an injunction can issue even where a showing of irreparable harm is not so strong. *See, Roth, id.* at 538 (" 'In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction.' ") (*quoting with approval Metropolitan Detroit Plumbing and Mechanical Contractors Ass'n v. HEW,* 418 F.Supp. 585, 586 (E.D.Mich.1976)).

*See also Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261 (6th Cir. 1985); *In re DeLorean Motor Co.* 755 F.2d 1223 (6th Cir.1985); *Van Drivers Union Local No. 392 v. Neal Moving & Storage,* 551 F.Supp. 429 (N.D.Ohio 1982).

Against this background, the Court now turns to Columbia's motion for preliminary injunction.

## LIKELIHOOD OF SUCCESS ON THE MERITS

Columbia's likelihood of success on the merits involves two questions:

1. Does Columbia have the right to condemn the subject property?
2. Is the Hostettler well producing Columbia storage gas?

For the reasons that follow, the Court finds that Columbia is likely to prevail if the answer to either question is "yes." The Court further finds that the answer to both questions is probably "yes."

### A. *Columbia's right to condemn.*

The defendants do not dispute the legal principle that, under the Court's prior holding in the *Johnson* case, Columbia has the right to condemn property within the protective acreage of a storage field. For two reasons, however, the defendants assert that in this particular case Columbia is not

likely to prevail on the right to condemn issue.

Defendants first argue that Columbia's right to condemn the Hostettler well will not accrue until the well ceases its native gas production. In support of this argument, the defendants note that Columbia's Holmes Storage Field's certificate contains the unusual feature of being open ended as to any time limit within which Columbia must exercise its power to condemn. From this, the defendants claim, one can infer that the intent of FERC was to "grandfather" wells which are still producing native gas. For reasons that appear further below, however, the Court finds that it is very probable that the Hostettler well is producing storage gas and not native gas. Therefore, if such an inference on the part of FERC can be drawn, it is probably not applicable to the Hostettler well.

Defendants also cite expert testimony concluding that to shut in the Hostettler well would threaten the remaining recoverable native gas reserves from the well. The defendants claim that this would result in waste which is prohibited by Ohio Rev. Code § 1509.20. The defendants therefore conclude that the Hostettler well is subject to a "grandfathering" rule under which Columbia cannot condemn the well until it ceases its native gas production. The Court concludes that this argument must fail whether or not the Hostettler well is producing storage gas. Columbia's power to condemn exists by virtue of federal law based upon a finding by the Federal Energy Regulatory Commission that the public convenience and necessity require the issuance of certificates for the purpose of protecting the integrity of gas storage fields. The Court is not aware of any authority holding that a state law prohibiting waste can be interposed to thwart or delay the execution of condemnation proceedings authorized by federal statute.

Thus, assuming without deciding that FERC did not intend to grandfather producing wells in the protective acreage, the Court concludes that Columbia has the present right to condemn the Hostettler well property, whether or not the well is producing storage gas.

Defendants argue further that under Columbia's FERC certificate, Columbia may not arbitrarily "pick and choose" to condemn some producing wells but not others. The defendants note that within the protective acreage at issue, there are several other producing wells which Columbia has not chosen to condemn. The defendants claim that Columbia's decision to focus on the Hostettler well was made arbitrarily, capriciously, and in bad faith.

■ The Court recognizes that the power of eminent domain is a special and limited power. The Court also recognizes that the use of the power should be scrutinized more closely when exercised by a private party rather than a governmental entity. *See, e.g., U.S. v. Certain Parcels of Land in Philadelphia,* 215 F.2d 140, 148 (3rd Cir.1954). Finally, the Court is aware that judicial intervention is warranted when there is evidence that the power to condemn has been wielded arbitrarily, abusively, or in bad faith. *United States v. 58.16 Acres of Land,* 478 F.2d 1055 (7th Cir.1973).

At least at this stage of the proceedings, the Court does not find any significant showing of the requisite bad faith evidence.[3] On the contrary, Columbia's attempt to condemn the Hostettler well seems reasonable in light of the Court's conclusion that the Hostettler well is probably producing storage gas. Further, from Columbia's apparent hands-off policy toward wells not posing a serious threat to the storage field, it would seem just as reasonable to infer good faith on the part of Columbia, in the sense that Columbia appears not to seek to disturb other persons' quiet enjoyment of property unless necessary.

---

3. The defendants concede that "generally the courts do not review the government's decision as to what land needs to be taken and placed in public use...." Amended Defendants' Post-Preliminary Injunction Hearing Memorandum (docket # 20) at p. 11. It seems that the defendants therefore bear the burden of proof on the issue of bad faith.

### B. *The Type of Gas From the Hostettler Well.*

Initially the Court notes the defendants' argument that the Court should not consider evidence that the Hostettler well is producing storage gas, because Columbia's FERC certificate shows the Hostettler property to be located in the Holmes Field's protective area which by definition is not supposed to be in active communication with storage gas. The Court does not believe that the fact that a well is located outside the active storage reservoir precludes the possibility that the well is producing storage gas. For example, in *Columbia Gas Transmission Corp. v. Smail,* C86–1196A (N.D.Ohio 1986) (*"Kies II"*), the Court held that Columbia does not lose title to underground storage gas merely because the gas migrates onto another's property. In the *Kies II* case, the private property in question lay entirely outside Columbia's storage boundaries. In the present case, the Hostettler property lies outside the active reservoir but within the protective acreage of the Holmes Storage Field. The Court concludes that under its *Kies II* holding the Court must consider evidence on the question of whether the Hostettler well is producing storage gas.

■ For the following reasons, the Court finds there is a strong likelihood that the Hostettler well is producing Columbia's storage gas. The Court's conclusion is based upon the testimony of the various experts who testified at the hearing. The parties stipulated to the qualifications of all experts.

Columbia's petroleum geologist Mary Friend performed studies of the underground sandstone formation and concluded that the Clinton formation sandstone beds which house the storage gas extend underneath the Hostettler property.

Other evidence, primarily evidence of abnormally high production of the Hostettler well and a chemical gas content similar to storage gas and not native gas, leads the Court to conclude that the Hostettler well is probably producing storage gas.

The evidence showed that the Hostettler well has had abnormal production compared to other Clinton wells. There was testimony that the Hostettler well's production has been nothing short of stupendous when compared to other Clinton wells.[4] There was further evidence that the Hostettler well's production followed a rise and decline pattern which corresponded to increases and decreases in storage field pressures.

Besides the evidence of abnormally high production, there was testimony from Columbia's expert storage engineer that the gas from the Hostettler well had both a methane content and a carbon dioxide content which one would expect from storage gas as opposed to native or natural gas.[5]

The defendants have attempted in various ways to refute the evidence and to assert that the Hostettler well is not producing storage gas. Upon consideration of the evidence as a whole, however, the Court concludes it is very probable that the Hostettler well is producing storage gas.

In summary, the Court concludes that Columbia is likely to succeed on the merits of this action in which Columbia seeks to condemn the Hostettler well and the eighty acre tract on which the well is located.

### IRREPARABLE INJURY TO PLAINTIFF SUBSTANTIAL HARM TO OTHERS THE PUBLIC INTEREST

Because these three factors are peculiarly intertwined in this case, the Court will discuss them together. Upon consideration of all factors for preliminary injunctive relief, the Court concludes that on balance Columbia has shown entitlement to the issuance of a preliminary injunction.

Columbia states that the operation of the Hostettler well has forced Columbia virtually to shut down its Holmes storage field.

---

4. For example, it appears that the Hostettler well in ten years' time has already outproduced the amount to be expected over the entire life span (generally about fifteen to twenty years) of a "normal" Clinton well.

5. The reason that the chemical makeup of storage gas is different from that of native gas is that most of Columbia's storage gas comes from the southwest part of the United States.

Continued operation of the well, Columbia asserts, will deprive Columbia and its consumers of the benefit of having this storage facility, with possibly tragic results if next winter is cold. Columbia asserts that the reason it seeks immediate preliminary injunctive relief is that it needs right now to begin its summer injections into the storage field.

Regarding the factor of harm to others, Columbia argues that, given the likelihood that production from the Hostettler well will be stopped at the conclusion of this action, Mr. Hill will suffer no harm if the well is shut in now. If the well is producing storage gas, Columbia notes, then Mr. Hill is not entitled to produce it in any event. To any extent the well is producing native gas, just compensation will be paid to Mr. Hill.

In opposing Columbia's motion, the defendants claim that both the public interest and the private interest would best be served by the denial of the motion. The defendants state that even if one assumes that the Hostettler well is producing nothing but storage gas, a shut in of the well would have a chilling effect on other private natural gas producers; that a shut in could result in the loss of recoverable native gas and the loss of cash flow to the defendants; and that a shut in would interfere with the quiet enjoyment of property.

With respect to the competing harms at stake, the defendants argue that Columbia will not suffer irreparable harm if the Court denies the motion for preliminary injunction. The defendants note that the Holmes Field has been essentially out of operation since 1983 and that Columbia has offered no evidence that it has a shortage of storage facilities.[6] The defendants also claim that, even if the Hostettler well is producing storage gas, "it could account for no more than 1% to 2½% of the gas in storage. A little leak at best." Defendants' Amended Post–Hearing Memorandum (docket # 20) at p. 7.

The Court has carefully considered these arguments in light of the Court's duty to weigh each of the preliminary injunction factors according to the circumstances of the case. *Mason County Medical Ass'n., supra,* (no single factor is determinative nor must plaintiff establish each factor). The Court concludes that in the present case there is a very strong likelihood that Columbia will succeed on the merits. The Court also concludes that there exists here a peculiarly vital public interest in ensuring adequate reserves of natural gas. Given the strong likelihood of success on the merits and further given the importance of the public interest sought to be protected, the Court concludes that on balance Columbia has made a sufficient showing of entitlement to preliminary injunctive relief.

In any event, the Court finds that protective measures are available to ensure that Columbia, as it has proclaimed it needs to do, does in fact reactivate the Holmes Storage Field forthwith.

## CONCLUSION

For the reasons stated above, the motion of the plaintiff Columbia Gas Transmission Corp. for preliminary injunction is granted, but upon the condition that Columbia reactivate the Holmes Storage Field forthwith and post a bond in the amount of $10,000.00.

Accordingly, the defendant William Hill is directed to shut in the Hostettler # 1 well and to stop producing gas from that well until further order of the Court. If it develops that Columbia does not forthwith begin to reactivate the Holmes Storage Field, the Court will promptly entertain a motion by the defendants to dissolve the preliminary injunction.

The plaintiff Columbia Gas Transmission Corporation is instructed to post a bond in the amount of $10,000.00.

IT IS SO ORDERED.

---

6. Defendants refer the Court to the testimony of Columbia's representative Mr. Brooks that Columbia is still in a gas over-supply situation.

*See* Defendants' Amended Post–Hearing Brief (docket # 20) at p. 6.