**CABOT CORPORATION, Plaintiff,**

v.

**Gregory A. KING, et al., Defendants.**

**No. 5:91 CV 1986.**

United States District Court,
N.D. Ohio, E.D.

April 24, 1992.

**154**

David A. Schaefer, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for plaintiff.

Edward G. Kemp, Paul Leslie Jackson, Roetzel & Andress, Akron, Ohio, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

## I. INTRODUCTION

On October 4, 1991, Plaintiff Cabot Corporation ("Cabot") filed this motion for a preliminary injunction against one of its former employees, Defendant Gregory King ("King") and Defendant Sid Richardson Carbon & Gasoline Company ("Sid Richardson"). Both sides submitted affidavits and other supporting material. The hearing in this matter was conducted before this Court on October 7, 1991. Following the hearing, both sides submitted post-hearing briefs.

Cabot claims that King breached his employment contract with Cabot by accepting employment with Sid Richardson, one of Cabot's direct competitors. Cabot asserts that this conduct violates a provision in King's employment contract which prohibits employees from seeking employment with Cabot's competitors for a period of one year from the termination of employment with Cabot.[1] Cabot seeks the following injunctive relief: that King not be allowed to work or be connected in any way with Sid Richardson or any of Cabot's other competitors for a period of one year, and that King not be allowed to contact any of Cabot's employees or customers.

## II. FACTUAL BACKGROUND

While the parties disagree as to the significance of the facts, the facts themselves are largely not in dispute. Cabot Corporation, headquartered in Massachusetts, is a manufacturing company that makes as its sole product carbon black. Carbon black[2] is a product that is used in the production of automobile tires and industrial products, such as hoses. Carbon black serves as a reinforcement agent, a filler for voids in rubber goods, and an abrasion resistant. Sid Richardson, a Texas Corporation, is also a manufacturing company that produces carbon black. Both companies have their primary sales offices in Akron, Ohio.

Carbon black is used in three markets: the tire market, the industrial market, and the specialty market. Cabot produces carbon black for all three markets, while Sid Richardson only sells to the tire and indus-

---

1. The terms of the covenant are more fully set out in the discussion.

2. It is the Court's understanding that the term "carbon black" is a term of art commonly used in the rubber industry.

trial markets. Further, it is agreed that, with respect to the tire and industrial markets, Sid Richardson is one of Cabot's direct competitors.

King began his employment with Cabot on August 14, 1989 at the Akron sales office, and resigned on August 30, 1991. While with Cabot, King held the title of Senior Salesman for the NACB Division, and was primarily responsible for sales in the industrial products market. King started working for Sid Richardson at its Akron sales office on October 1, 1991. King currently holds the position of "National Accounts Manager" at Sid Richardson, and is responsible for sales to certain tire manufacturers.

King was, however, involved in one particular tire account while working for Cabot. Cabot had developed a product known as CRX 1420, which is a member of the carbon blacks family, and is to be used in the production of racing tires. R & J Manufacturers had a contract with Cabot for the development and production of these high performance tires. King was assigned the R & J account, and was responsible for sales to R & J. The technology that goes into the production of CRX 1420 is not generally known to the industry.

Further, it is undisputed that King attended at least two market strategy meetings where pricing, marketing, and development of the tire accounts were discussed. Additionally, all parties agree that King had access to price sheets for the tire accounts.[3] Applying these facts to the contract provision in question, the Court finds that injunctive relief is appropriate and grants the plaintiff's motion for preliminary relief.

## III. PRELIMINARY INJUNCTION STANDARD

 Under applicable Sixth Circuit precedent, a court must consider four factors in determining whether it should grant an injunction:

(1) whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

(2) whether the plaintiff has shown irreparable injury;

(3) whether the issuance of a preliminary injunction would cause substantial harm to others;

(4) whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977). The Court may not weigh mechanically the four factors set out in *Mason County.* No single factor is determinative, and the Court should weigh each of the factors in light of the factual circumstances of the case. *See Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537–38 (6th Cir.1978), *cert. granted,* 440 U.S. 944, 99 S.Ct. 1420, 59 L.Ed.2d 632 *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

In *Roth,* the Sixth Circuit held that where a plaintiff makes a strong showing of irreparable harm, the injunction may issue on a lesser showing of a likelihood of prevailing on the merits. *Id.* In a case involving great irreparable harm, then, an injunction could issue on a showing that the plaintiff has raised questions that are "fair ground for litigation." *Id.* at 537; *see Brandeis Machinery & Supply Corp. v. Barber–Greene Company,* 503 F.2d 503, 505 (6th Cir.1974). It follows that the showing of a strong likelihood of prevailing on the merits will enable a court to issue an injunction despite a lesser showing of irreparable harm. *See Roth,* 583 F.2d at 537–38 (quoting *Metropolitan Detroit Plumbing Mechanical Contractors Ass'n v. HEW,* 418 F.Supp. 585, 586 (E.D.Mich.1976)). *See also Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261 (6th Cir.1985); *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985); *Van Drivers Union Local No. 392 v. Neal Moving & Storage,* 551 F.Supp. 429 (N.D. Ohio 1982).

---

**3.** King testified, however, that the price sheets are in code and that only the salesman assigned

to the account could decipher the document.

When considering plaintiff's request for a preliminary injunction, the Court is required to make preliminary fact findings to determine whether or not the four factors weigh in favor of granting equitable relief prior to the completion of discovery. Thus, the following fact findings are made on affidavits, exhibits and testimony offered at the time of the preliminary injunction hearing and in the briefs filed relevant to that motion. Further, the plaintiff's burden is greater at the preliminary injunction stage because the plaintiff bears the burden of demonstrating the probability of success on a claim by a "strong" or "substantial" likelihood of success on the merits. The Court's preliminary findings are not entitled to a preclusive effect in the event the case is tried to a fact-finder at a later date, at which time the ultimate fact-finder may reach a different conclusion. *See BLEOA v. City of Akron*, 52 Empl.Prac.Dec. (CCH) P 39, 510, 1989 WL 168010 (N.D. Ohio 1989).

## IV. DISCUSSION

### A. *The terms of the covenant not to compete*

Before the Court can determine the likelihood that plaintiff would be able to prevail at trial on its suit against King and Sid Richardson, the Court must interpret the contract provision in question and determine what conduct it prohibits.

The covenant not to compete, signed by King, in its entirety reads as follows:

6. That you will not, for a period of one year from the date of termination of your employment with Cabot, become associated with or employed by any individual, firm, or corporation in any capacity involving research in, production of, design or engineering of or sales of any product or element thereof, or any processes or facilities for the production of any product or element thereof, (i) which is or may become competitive with any product which is the subject of Cabot's research, design, development, manufacture, or sale prior to the time of your termination, and (ii) with respect to which product or element thereof, or processes or facilities for the production thereof, you possess or have had access to confidential information, technical know-how, or trade secrets of Cabot.

You further agree that if Cabot so requests, you will not become associated with or employed in any capacity by any individual, firm, or corporation engaged or planning to engage in activities competitive with those activities of Cabot with respect to which you possess or have had access to confidential information, technical know-how or trade secrets of Cabot for such period, not in excess of one year as Cabot shall specify, provided that, during that period, Cabot shall continue to pay you compensation at the rate of one-half of the base salary or wage being paid to you at the time of your termination.

The second sentence, which outlines the plaintiffs right to invoke the covenant not to compete in exchange for one half base salary paid to the employee, is the critical language for the purposes of the preliminary injunction motion. Cabot argues that the second sentence permits it to prevent King from working for any competitor who competes in the market that King possesses secret knowledge that could benefit the competitor. King argues that the covenant only prevents him from working in a position where he would need to use the confidential information that he gained at Cabot.[4]

The Court finds, however, that when the second sentence is dissected, its meaning is clear. Eliminating the excess verbiage, the provision reads: "You agree you will not become employed in any capacity by a corporation engaged in activities competitive with those activities of Cabot with respect to which you have knowledge." Thus, King cannot work for a firm

---

4. King argues that the "with respect to which he possesses ... confidential information" language modifies the "in any capacity" language. Thus, King argues that the provision should read: "employee may not engage in any capacity with respect to which he possesses any confidential information."

or individual who competes with Cabot in an area where King possesses confidential information.

The Court is unpersuaded by King's argument that King can only violate the contract if he is employed in a position that mandates that he use the confidential information he obtained at Cabot. King argues that because he will be working in Sid Richardson's tire division, he will not need to use the confidential information regarding the Cabots industrial division; and therefore, his employment at Sid Richardson will not violate the covenant. Even if King's new position does not require the application of the confidential information, he is still in violation if his new employer competes in the area of King's inside knowledge. Whether he must use the information or not, King would still be bringing the information to the new employer, an event that Cabot sought to prevent with the covenant, and an event that they were willing to spend $35,000 to avoid.

### B. *King's conduct*

■ The next inquiry is whether King's conduct violates the covenant not to compete in the Cabot employment contract. King's responsibilities at Cabot were primarily centered around sales in the industrial market. As a result, King had access to confidential information regarding pricing, market position, marketing, and customer lists. There was also evidence that King had access to confidential information in the tire market. He attended several strategy meetings where price and marketing in the tire market were discussed. Also it appears that he had access to price sheets for the tire market, although King testified, and Winn Cates, Vice President of Cabot, verified, that the price sheets were in code, and only the sales agent assigned to the account could readily decipher them. Additionally, King was the sales agent assigned to the R & J Tire account for the CRX–1420 racing tires.

From the facts above, it is evident that King has extensive knowledge, gained through his employment with Cabot, regarding the use of carbon black in Cabot's industrial division. These facts, alone, are sufficient to establish that King has violated the covenant not to compete. Sid Richardson sells carbon black in the industrial market, so King is now working for a firm who competes in an area where King possesses confidential information obtained at Cabot. This is the very conduct that the covenant prohibits. It does not matter that King worked in the industrial division [5] of Cabot, and will be working in the tire division of Sid Richardson. King still brings his confidential knowledge of the industrial division of Cabot to Sid Richardson, a competitor in that market. Thus, there is a substantial likelihood that Cabot will be able to establish that King violated the covenant not to compete.

### C. *Enforcement of a reasonable covenant*

■ To prevail on a breach of a restrictive covenant claim, the plaintiff-employer must demonstrate that, in addition to the fact that the employee has violated the covenant, the contract provision is reasonable. *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975). *Raimonde* at 26, 325 N.E.2d 544. A restrictive covenant is reasonable if "it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde* at 26, 325 N.E.2d 544. *Economou v. Physicians Weight Loss Centers*, 756 F.Supp. 1024 (N.D. Ohio 1991) (court held that a covenant not to compete for one year within a fifty mile radius of the plaintiff's business was reasonable).

Further, even an unreasonable covenant will be "enforced to the extent necessary to protect the employer's legitimate interests." *Id.;* and *Rogers v. Runfola & Assoc.*, 57 Ohio St.3d 5, 565 N.E.2d 540 (1991). In *Rogers,* the covenant in question prohib-

---

**5.** While Vice President Cates testified that Cabot does not separate departments for the various markets that carbon black is sold in, he did acknowledge that there is a separate manager for the industrial and tire market.

ited the defendant-employee from providing stenography service in Franklin County, Ohio for two years and from ever approaching any of the employer's clients. The court held that the covenant was unreasonable, and modified it so that the employee was only prohibited from working as a stenographer or soliciting employer's clients for one year. The court believed that the provision preventing the employee from ever soliciting business from plaintiff's clients was simply too extreme and overbroad.

█ The Court finds that there is a substantial likelihood that the plaintiff will be able to establish that the restrictive covenant is reasonable. There is no way, short of banning King from working for Sid Richardson, of insuring that King will not divulge the information he has regarding Cabot's industrial division. Further, King is not completely precluded from pursuing any type of employment in chemical sales. He is only prohibited from accepting employment from a competitor in the carbon black industrial market.[6] Also, the covenant is only for one year and King will be paid $35,000 during that year for not competing; therefore, the covenant will not impose upon King an undue hardship.

Finally, King argues that Cabot has failed to make a showing of irreparable harm if the preliminary injunction is not imposed. In his affidavit, King noted that he will be working in the tire division, and has agreed not to disclose his confidential information regarding Cabot's industrial division to Sid Richardson. Further, King argues that "given the fact that carbon black is a fairly generic commodity, it is just as reasonable to assume that Plaintiff will lose absolutely no business or customers." Opposition Brief at 4.

█ The Court finds, however, that Cabot will suffer irreparable harm if the preliminary injunction is not granted. King has a great deal of knowledge regarding prices and customers in the industrial division at Cabot. If Sid Richardson is given the opportunity to extract this information from King, Cabot could lose its client base and face financial ruin. Cabot should not have to rely on his adversary's "promise" to insure the protection of its rights. Additionally, it does not seem to follow that because carbon black is a generic product, there is little chance of Cabot losing business.

The irreparable harm that Cabot will suffer if the injunction is not granted is even more significant when it is compared to the potential harm that King will suffer if the injunction is granted. King is currently being compensated by Cabot for one half of his salary ($35,000) per the terms of the restrictive covenant. Moreover, the Court will set bond in a sum to sufficiently prevent unfair prejudice to King in the event that the trial court finds that he has not violated the restrictive covenant.

Further, even if Cabot could not make a strong showing of irreparable harm, the strong showing of substantial likelihood of success on the merits means that Cabot may make a lesser showing of irreparable harm. *Roth; supra.* In sum, having weighed the four considerations, the Court finds that preliminary injunction is appropriate.[7]

## V. BOND PROVISIONS

At the October 7, 1991 hearing, the Court discussed, and the parties agreed, that $50,000 bond would be appropriate in the event that the preliminary injunction was granted. The Court hereby sets the bond at $50,000.

---

6. Cabot may argue that King is also prohibited from seeking employment with a firm that deals with carbon black in the tire market. Since the Court believes that his knowledge in the tire market is not significant to the disposition of this case, this argument is not explored in more detail.

7. The Court believes that because this is a contract dispute between two private parties, the interest of third parties and the public's interest in this matter are not significant factors, and did not weigh heavily in the Court's analysis. "[I]f the public has an interest in these issues at all, it is in seeing that reasonable non-compete covenants are preserved." *Economou* at 1039.

## VI. CONCLUSION

For the foregoing reasons, Cabot's motion for preliminary injunction is granted, and shall become effective upon Cabot's posting of $50,000 as bond in a manner that is acceptable to the Clerk of Courts. From the date of posting, King is enjoined from engaging in any employment capacity with defendant Sid Richardson.

IT IS SO ORDERED.