OPINION
{¶ 1} Plaintiffs-appellants appeal the judgment of the Portage County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, P M Ltd. (dba P M Estates, Modern Management Solutions, LCC, Raymond Vehovec, Carol Foster, and KMV V Ltd. For the following reasons, we affirm, in part, and reverse, in part, the decision of the court below and remand this matter for further proceedings. *Page 2 
 {¶ 2} P M Estates is a mobile or manufactured home park located in Garrettsville, Ohio. The park is located north of State Route 82 and contains 233 lots. The park is bisected by Mahoning Creek, a tributary of Eagle Creek running from west to east, creating in the center of the park a "hundred year flood plain," i.e. an area adjoining a river or stream inundated with a flood having a one percent chance of being equaled or exceeded in any given year, established by the Federal Emergency Management Agency. R.C. 3733.01(M), (N), (O) and (P).
 {¶ 3} Access to the lots located north of Mahoning Creek is only possible where the creek is bridged. Prior to Vehovec's acquisition of the property in 1987, the only existing bridge was located at Bradfield Drive. In 1991, Vehovec hired Kainrad Excavating to install a second bridge at Chapel Drive. This bridge consisted of two corrugated steel pipes, or culverts, five feet in diameter, laid across the bed of the creek and paved over.
 {¶ 4} On June 18, 2002, Chris Arndt, Doug and Denise Bly, James and Patricia Manges, and Jason and Darlene Debolt filed a Class Action Complaint (Other Tort) "on behalf of all natural persons who have resided in P M Estates * * * since January 1, 1992" against P M Estates and Modern Management Solutions. On September 24, 2003, and on February 24, 2004, First and Second Amended Class Action Complaints (Other Tort) were filed respectively. In the Second Amended Complaint, William Mzik and Darlene Waggoner were added as class representative plaintiffs.
 {¶ 5} Plaintiffs alleged that the culvert bridge, due to the inadequacy of its design, obstructs the natural flow of the creek, "causing or promoting flooding." Plaintiffs further alleged that P M Estates was aware of the problem caused by the culvert bridge but failed to take corrective action to prevent further flooding. *Page 3 
 {¶ 6} P M Estates' liability in the complaint is premised on six violations of R.C. 3733.10, setting forth the obligations of manufactured home park operators. Specifically, the plaintiffs alleged that P M Estates violated R.C. 3733.10(A)(1) by failing to prevent recurrent flooding, violated R.C. 3733.10(A)(1) by failing to provide a flood plain site plan in accordance with the Ohio Administrative Code, violated R.C. 3733.10(A)(1) by failing to notify the county health department of the occurrence of a flood event, violated R.C. 3733.10(A)(2) by failing to maintain the premises in a fit and habitable condition, violated R.C. 3733.10(A)(3) by failing to keep all common areas in a safe and sanitary condition, and violated R.C. 3733.10(A)(4) by failing to maintain storm sewers in good and safe working order. The complaint also contained a claim for punitive damages under R.C. 2315.21(C)(1).
 {¶ 7} For relief, the plaintiffs sought "both preliminary and permanent injunctions" requiring P M Estates to remove the culvert bridge, to erect a new and appropriately designed bridge, to provide all documents to the Ohio Department of Health as required by the Ohio Administrative Code, to submit a flood plain management plan, and to refrain from increasing rent during the pendency of the class action except as permitted by R.C. 3733.09(C). The plaintiffs further sought declaratory judgment recognizing their right to bring a private cause of action under R.C. Chapter 3733 for violations thereof. Finally, the plaintiffs demanded compensatory damages, attorneys' fees, and costs.
 {¶ 8} On November 12, 2003, class-action plaintiffs Arndt, the Blys, the Manges, the Debolts, joined by P M Estates residents Dianne, Dusty and David Lough, Dusty M. Wolfe, Darlene Stanley, Robert and Denise Wilcox, and Paul J. Kellar, filed a separate civil Complaint against P M Estates and Modern Management Solutions. In this action, the plaintiffs sought injunctive relief, declaratory relief, *Page 4 
compensatory damages, and punitive damages based on the violations of R.C. 3733.10 detailed in their class-action complaint. Additionally, the plaintiffs alleged causes of action for Fraudulent Misrepresentation and Fraudulent Concealment. On February 24, 2004, the plaintiffs filed a First Amended Complaint without the claims for injunctive relief.
 {¶ 9} On January 12, 2004, the trial court issued an Order and Journal Entry, granting, in part, the plaintiffs' Motion for Class Certification. The trial court's judgment was appealed by all parties.
 {¶ 10} On June 18, 2004, the trial court issued an Order and Journal Entry, consolidating the class action with the separately filed action seeking compensatory damages and stayed both cases pending the outcome of the appeal of the class certification judgment.
 {¶ 11} On August 26, 2005, this court rendered its decision, affirming, in part, and reversing, in part, the lower court's judgment regarding class certification. Arndt v. P M Ltd., 163 Ohio App.3d 179,2005-Ohio-4481, at ¶ 37. Consistent with this court's opinion, the plaintiffs were certified as a class for the purposes of obtaining injunctive relief and of obtaining damages for loss of use of the common areas within the park and loss of enjoyment of homes caused by recurrent flooding. Id. at ¶ 6, ¶ 37.
 {¶ 12} On October 5, 2006, the plaintiffs filed a Third Amended Class Action Complaint (Other Tort). In the Third Amended Complaint, Raymond Vehovec, Carol Foster, and KMV V, Ltd. were added as defendants. In other respects, the Third Amended Complaint contains the same allegations and claims for relief set forth in prior complaints.
 {¶ 13} On January 31, 2007, the defendants filed a Motion for Summary Judgment. *Page 5 
 {¶ 14} On March 6, 2007, the plaintiffs filed a Motion for Partial Summary Judgment on the first count of the third amended complaint, i.e. that defendants have failed to prevent recurrent flooding in violation of R.C. 3733.10(A)(1), and a Motion for Preliminary Injunction. The plaintiffs also filed a Motion for Preliminary Injunction seeking orders requiring the defendants to submit to the court a plan for relocating homes within the hundred year flood plain and a plan for alleviating the risk of recurrent flooding and prohibiting defendants from locating new homes within the hundred year flood plain.
 {¶ 15} On April 13, 2007, the trial court issued an Order and Journal Entry, denying plaintiffs' Motion for Partial Summary Judgment and granting the defendants' Motion for Summary Judgment. Summary judgment was granted in favor of defendant Carol Foster on the grounds that she is not licensed as an "operator" and, therefore, not subject to the duties imposed by R.C. 3733.10. R.C. 3733.01(G) ("`[o]perator' means the person who has responsible charge of a manufactured home park and who is licensed under sections 3733.01 to 3733.08 of the Revised Code").
 {¶ 16} The plaintiffs timely appeal and raise the following assignments of error.
 {¶ 17} "[1.] The trial court committed prejudicial error by granting summary judgment to Defendants-Appellees on the claim that an operator's failure to address recurring flooding in a manufactured home park breaches the operator's obligation under R.C. 3733.10(A)(1) to comply with OAC 3701-27-07(A).
 {¶ 18} "[2.] The trial court committed prejudicial error by granting summary judgment to Defendants-Appellees on Plaintiffs-Appellants' injunctive relief claim to remedy the persistent problem of recurring flooding in the park.
 {¶ 19} "[3.] The trial court erred to the prejudice of Plaintiffs-Appellants by granting summary judgment to Defendants-Appellees on the claim that the park's failure *Page 6 
to address recurring flooding also violates two related obligations imposed upon operators under R.C. 3733.10(A).
 {¶ 20} "[4.] The trial court erred to the prejudice of Plaintiffs-Appellants by granting summary judgment to Defendants-Appellees regarding the operator's obligation under R.C. 3733.10(A)(1) to comply with the ODH mandate to report flood events in a timely manner.
 {¶ 21} "[5.] The trial court erred to the prejudice of Plaintiffs-Appellants by granting summary judgment to Defendants-Appellees regarding the operator's obligation under R.C. 3733.10(A)(1) to comply with ODH's mandate to provide a flood plain site plan.
 {¶ 22} "[6.] The trial court erred to the prejudice of certain Plaintiffs-Appellants by granting summary judgment to Defendants-Appellees regarding their common law claim of fraudulent concealment.
 {¶ 23} "[7.] The trial court erred to the prejudice of Plaintiffs-Appellants by granting summary judgment to Defendants-Appellees regarding Plaintiffs-Appellants' request for punitive damages."
 {¶ 24} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "[t]he moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 1996-Ohio-336. A de novo review requires the appellate court to *Page 7 
conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. Cty. Commrs.of Scioto Cty. (1993), 87 Ohio App.3d 704, 711 (citation omitted).
 {¶ 25} The plaintiffs' claims in the present case are premised on the defendants' alleged violation of certain provisions of R.C. Chapter 3733, enacted by the Ohio General Assembly in 1977 to "regulat[e] the relationship between manufactured home landlords and their tenants."Schwartz v. McAfee (1986), 22 Ohio St.3d 14, 17.
 {¶ 26} The obligations of a manufactured home "park operator" are as follows.
 {¶ 27} "(A) A park operator who is a party to a rental agreement shall:
 {¶ 28} Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety and rules of the public health council;
 {¶ 29} Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
 {¶ 30} Keep all common areas of the premises in a safe and sanitary condition;
 {¶ 31} Maintain in good and safe working order and condition all electrical and plumbing fixtures and appliances, and septic systems, sanitary and storm sewers, refuse receptacles, and well and water systems that are supplied or required to be supplied by him;
 {¶ 32} * * * .
 {¶ 33} (B) If the park operator violates any provision of this section * * *, the resident may recover actual damages resulting from the violation * * * and injunctive relief to prevent the recurrence of the conduct, and if he obtains a judgment, reasonable attorneys' fees, or terminate the rental agreement." R.C. 3733.10. *Page 8 
 {¶ 34} By virtue of a park operator's obligation to comply with "codes which materially affect health and safety," the plaintiffs also rely on the following provisions of the Ohio Administrative Code.
 {¶ 35} "The operator of a manufactured home park shall ensure that the manufactured home park site is remote from public health hazards, is well drained and is not subject to recurring flooding. Each manufactured home park lot shall be properly graded so as to prevent the accumulation of storm or other waters." Adm. Code 3701-27-07(A).
 {¶ 36} "If the director notifies the operator of a manufactured home park that the manufactured home park site or any portion thereof is located in a one hundred year flood plain as determined by reference to the federal emergency management agency's flood insurance rate maps or other means, the operator shall provide to the director or licensor authorized by the director within ninety days of the notice, detailed drawings and other documentation prepared by a registered professional engineer that denote the following: (1) The exact portions of the park which are within the one hundred year flood plain; (2) The elevations and exact boundaries of the one hundred year flood plain; (3) The lot number of any lot or portion thereof which is located within the one hundred year flood plain and the type of manufactured home located on the lot; and (4) The exact boundaries of the regulatory floodway limits if these are located within the manufactured home park." Adm. Code 3701-27-07(B).
 {¶ 37} "When a flood event affects a manufactured home park located in a one hundred year flood plain, * * * [t]he operator of the manufactured home park shall notify the licensor in person or by telephone of the occurrence of the flood event within two business days of the occurrence of the flood event * * * ." Adm. Code 3701-27-07.1(A)(1). *Page 9 
 {¶ 38} As the court below correctly recognized, purported violations of a legislative obligation are analyzed within the framework of a claim for negligence. "Where a statute contains a general, abstract description of a duty, a plaintiff proving that a defendant violated the statute must nevertheless prove each of the elements of negligence in order to prevail." Sikora v. Wenzel, 88 Ohio St.3d 493, 496,2000-Ohio-406. "Most statutes are construed to require that the actor take reasonable diligence and care to comply, and if after such diligence and care the actor is unable to comply, the violation will ordinarily be excused." Robinson v. Bates, 112 Ohio St.3d 17,2006-Ohio-6362, at ¶ 23 (citation omitted).
 {¶ 39} "Where a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence per se."Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563, 565,1998-Ohio-184, citing Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, at paragraph two of the syllabus; Sikora, 88 Ohio St.3d at the syllabus (holding that "[a] landlord's violation of the duties imposed by R.C. 5321.04(A)(1) [`[a] landlord * * * shall * * * [c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety'] or 5321.04(A)(2) [`[a] landlord * * * shall * * * [m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition'] constitutes negligence per se").[1] "Application of negligence per se in a tort action means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff. It is not a finding of liability per se
because the plaintiff will *Page 10 
also have to prove proximate cause and damages." Chambers,82 Ohio St.3d at 565, citing Pond v. Leslein (1995), 72 Ohio St. 3d 50, 53,1995-Ohio-193.
 {¶ 40} Before considering the assigned errors, it is necessary to address the defendants' argument that the provisions of the Ohio Administrative Code relied upon by the plaintiffs do not apply to private causes of action under R.C. 3733.10. The basis for this argument is found in that part of Ohio Adm. Code 3701-27-07, known as the "history trail," part of the "supplemental information" required by the Ohio Legislative Service Commission's Rule Drafting Manual (4th Ed. 2006). The "Rule Amplifies Line" for Ohio Adm. Code 3701-27-07 provides as follows: "Rule Amplifies: 3733.01, 3733.08." According to the Rule Drafting Manual, this line "cites the Revised Code section(s) that the rule expands upon, further details, or clarifies (i.e., amplifies or implements)." Rule Drafting Manual 19. Defendants maintain that, because Ohio Adm. Code 3701-27-07 "does not amplify R.C. 3733.10," plaintiffs cannot rely upon Ohio Adm. Code 3701-27-07 to impose a duty upon defendants to "ensure that the manufactured home park * * * is well drained and not subject to recurrent flooding." We disagree.
 {¶ 41} First, the "Rule Amplifies Line" does not constitute "the statement of the law expressed by the rule." Rule Drafting Manual 14. Rather, it merely provides "information about the statutes that prescribe the process for adopting the rule." Rule Drafting Manual 18. The statement of law expressed by a rule "must be substantively complete in and of itself." Rule Drafting Manual 14. There is no authority of which this court is aware that supports the defendants' assertion that provisions of the Ohio Administrative Code are only applicable under the Revised Code Sections which they amplify.
 {¶ 42} Second, Revised Code 3733.01, which Adm. Code 3701-27-07 amplifies, contains definitions applicable to all of Chapter 3733, including Revised Code 3733.10. *Page 11 
 {¶ 43} Third, the defendants did not raise this argument in the court below. For this reason, the defendants are deemed to have waived the right to raise this issue on appeal. Smoske v. Sicher, 11th Dist. Nos. 2006-G-2720 and 2006-G-2731, 2007-Ohio-5617, at ¶ 57 (citation omitted).
 {¶ 44} In sum, pursuant to R.C. 3733.10(A)(1) and Ohio Adm. Code 3701-27-07(A), a manufactured home park operator has a duty to "ensure that * * * a manufactured home park * * * is well drained and not subject to recurrent flooding." Cf. R.C. 3733.14 ("[i]n any action under sections 3733.09 to 3733.20 of the Revised Code, any party may recoverdamages for the breach of contract or the breach of any duty that isimposed by law") (emphasis added).
 {¶ 45} Under their first assignment of error, plaintiffs argue the trial court erred in granting summary judgment on the individual plaintiffs' claims for compensatory damages and the class action plaintiffs' claims for loss of use/loss of enjoyment damages.
 {¶ 46} In analyzing the plaintiffs' claims, the trial court recognized the plaintiffs' evidence that the installation of the culvert bridge aggravated the problem of flooding within P M Estates. Although there is no evidence that the culvert bridge causes the flooding of Mahoning Creek, the testimony of the plaintiffs, their expert, and certain government officials, is that the culvert is "easily blocked by debris and silt" which contributes to the flooding. The trial court then considered the issue of damages proximately caused by the installation of the culvert bridge in the following terms: "[U]nless the individual Plaintiffs show that their property was damaged, or suffered additional damage, from the extra width and depth of the floods that the bridge allegedly created, Plaintiffs have no evidence that the bridge proximately caused their damages and their claims must fail. Likewise, unless the class Plaintiffs show that the common *Page 12 
areas would not have flooded but for the [culvert] bridge, their claim for loss of use and enjoyment of the common areas must fail."
 {¶ 47} The problem with the lower court's analysis is that it conceived the defendants' breach of duty under R.C. 3733.10(A)(1)/Adm. Code 3701-27-07 as only aggravating a pre-existing tendency of Mahoning Creek to flood. If this were so, the lower court would be correct that the plaintiffs had to demonstrate a causal link between their damages and the degree to which the flooding was aggravated by the culvert bridge.
 {¶ 48} A manufactured park operator's duty under R.C. 3733.10, however, is broader than merely refraining from aggravating existing flood conditions. A park operator must ensure the park is not subject to recurrent flooding. The lower court recognized the broader scope of the defendants' duty elsewhere in its judgment, where the court stated that it "agrees that the law requires a park operator to do what is reasonably necessary to prevent recurring flooding." Cf. Willow RestTrailer Park, Inc. v. Willow Tenants' Assoc, Inc. (Mar. 27, 1996), 9th Dist. No. 17338, 1996 Ohio App. LEXIS 1144, at *18-*19 (affirming judgment against a park operator who "failed to meet the duties to prevent or correct the flooding problem").
 {¶ 49} In this respect, the defendants' argument that the ultimate cause of Mahoning Creek's flooding is the existence of an extensive wetland on the property to the east of P M Estates has no bearing on defendants' liability. The question is whether the defendants made reasonable efforts to prevent or ameliorate the recurrent flooding of the creek.
 {¶ 50} Construing the evidence in the present case in the plaintiffs' favor, genuine issues of material fact exist whether the defendants made such efforts and whether the plaintiffs suffered damages as the proximate result of defendants' failure. *Page 13 
The plaintiffs' expert, De Groot, identified two conditions aggravating the severity of the flooding, i.e. the construction of the culvert bridge in 1991, and the accumulation of sediment in the creek bed.
 {¶ 51} In 1993, a former park resident, Kenneth Bragg, filed suit against Vehovec, dba P M Estates alleging that the construction of the culvert bridge "so obstructed the flow of waters through the watercourse that waters were backed onto Plaintiffs land to a considerable depth, flooding Plaintiffs land and improvements." The complaint further alleged that, prior to the construction, "the ditch and watercourse had been adequate to permit the unobstructed passage of all the waters within its boundary during periods of high water." Bragg settled with P M Estates and the case was dismissed.
 {¶ 52} The deposition testimony of many of the plaintiffs mirrors the allegations contained in Bragg's complaint. Their testimony indicates the frequency and the severity of the flooding increased after the installation of the culvert. Several of the plaintiffs report complaining to P M Estates about the increased flooding after the culvert's installation. The plaintiffs' testimony also attests to damage incurred as a result of the flooding after the culvert's installation, such as lost skirting and yard equipment, ruined landscaping, and water-damaged insulation and flooring. Finally, there was testimony that the recurrent flooding affected the common areas of the park and rendered them unusable.
 {¶ 53} The trial court was correct to recognize the importance of establishing a causal relationship between the purported aggravation of the flooding by the installation of the culvert bridge and the damages claimed by plaintiffs. In his expert's report, De Groot noted that the more extraordinary the flood event, the less impact the culvert *Page 14 
bridge had in aggravating the effects of the flood.[2] Thus, in the case of an extraordinary flood event, such as the July 2003 flood, the defendants' potential liability is much less than in the case of a smaller flood event, when the effect of the culvert bridge or the accumulated sediment would be more prominent. However, the plaintiffs have met their burden of demonstrating a genuine issue regarding causation exists by their testimony that the damage caused by flooding increased after the installation of the culvert bridge. The plaintiffs have also demonstrated genuine issue regarding the defendants' failure to address recurrent flooding, irrespective of whether the effects of the flooding were aggravated by the installation of the culvert bridge and/or failure to dredge the sediment. Finally, the plaintiffs have also raised an issue regarding whether it would have been reasonable for the defendants to relocate the homes on lots affected by recurrent flooding to other lots within the park.
 {¶ 54} The defendants assert the plaintiffs' position would make park operators liable for "all flooding" and that flooding is an "act of God" for which the defendants have no liability. Both assertions are inaccurate.
 {¶ 55} A park operator's duty under R.C. 3733.10(A)(1)/Adm. Code 3701-27-07, as the trial court recognized, is to do what is reasonably necessary to prevent recurrent flooding. As noted above, the Ohio Supreme Court construes such statutes as requiring the actor to use "reasonable diligence and care" to comply with the statutory obligation and that, if compliance is impossible despite such diligence and care, the actor is relieved of liability. Robinson, 2006-Ohio-6362, at ¶ 23
(citation omitted). Conversely, where an actor fails to exercise reasonable diligence and care to comply with the statutory duty, they may be found liable. Thus, holding defendants liable for failing to *Page 15 
prevent recurrent flooding does not impose strict liability on park operators for any or all flooding that may occur. Cf. Sikora,88 Ohio St.3d at 498 ("[a]bsent language denoting that liability exists without possibility of excuses, we are unpersuaded that the intent behind this statute [requiring `compliance] with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety'] was to eliminate excuses and impose strict liability").
 {¶ 56} In Ohio law, the term "act of God" means "any irresistible disaster, the result of natural causes, such as earthquakes, violent storms, lightning and unprecedented floods. It is such a disaster arising from such causes, and which could not have been reasonably anticipated, guarded against or resisted. It must be due directly and exclusively to such a natural cause without human intervention."Piqua v. Morris (1918), 98 Ohio St. 42, 47-48. A defendant may be held liable for damages despite the fact that an injury is jointly caused by his negligence and an act of God. Id. at paragraphs one and two the syllabus; Bier v. New Philadelphia (1984), 11 Ohio St.3d 134, 135, quoting Lodwicks Kennedy v. Ohio Ins. Co. (1832), 5 Ohio 433, 437
("[i]f proper care and diligence [on a defendant's part] would have avoided the act, it is not excusable as the act of God"). "In order to fix liability on an owner in such case, it must be shown that his negligence concurred with the act of God in causing the injury; but if the act of God, such as an extraordinary flood, was so overwhelming and destructive as to produce the injury, whether the defendant had been negligent or not, his negligence cannot be held to be the proximate cause of the injury." Morris, 98 Ohio St. 42, at paragraph three of the syllabus.
 {¶ 57} For example, in Layne v. Markley (Oct. 18, 1993), 12th Dist. No. CA93-02-005, 1993 Ohio App. LEXIS 5047, the court of appeals overturned a grant of summary judgment in a factually similar situation. In Layne, the plaintiffs-appellants were owners *Page 16 
of property near the T.A. Smith Drainage Ditch, a free flowing water course. Id. at *1. In 1983, the defendants-appellees constructed a culvert bridge over the ditch. In 1990, the plaintiffs' property was damaged when the culvert flooded during a "severe storm." Id. at * 2. The plaintiffs sued, alleging the negligent design and construction of the culvert bridge. The trial court granted summary judgment in favor of defendants "based upon its findings that the damage to appellants' property was proximately caused by an unforeseeable act of God." Id.
 {¶ 58} In overturning the trial court, the court of appeals held that "if the evidence indicates that the negligence of the defendant combined with some natural force to produce the injury in question, the issue of proximate causation is one for the jury to consider and summary judgment may not properly be rendered." Id. at *4, citing Bier,11 Ohio St.3d at 36, and Morris, 98 Ohio St. at 52.
 {¶ 59} The first assignment of error is with merit.
 {¶ 60} In their second assignment of error, plaintiffs assert the trial court erred in granting summary judgment on their claims for injunctive relief.
 {¶ 61} In their Third Amended Complaint, the plaintiffs sought preventative and mandatory injuctions requiring the defendants to remove the existing culvert bridge; construct an "appropriate bridge" in its place; submit to the Ohio Department of Health all documents required by Ohio Adm. Code 3701-27-07(B); submit a flood plain management plan; and refrain from increasing rent except as permitted by R.C. 3733.09(C). In a Motion for Preliminary Injunction filed in conjunction with their Motion for Partial Summary Judgment, the plaintiffs sought additional orders requiring the defendants to remove homes within the hundred year flood plain, submit plans to alleviate the flooding at the Chapel Street crossing, and preventing the defendants from locating new homes within the hundred year flood plain. *Page 17 
 {¶ 62} Plaintiffs are authorized, under R.C. 3733.10(B), to seek injunctive relief against a park operator to prevent the "recurrence" of conduct constituting a violation of R.C. 3733.10(A).
 {¶ 63} "Injunction is an extraordinary remedy equitable in nature, and its issuance may not be demanded as a matter of strict right; the allowance of an injunction rests in the sound discretion of the court and depends on the facts and circumstances surrounding the particular case * * * ." Perkins v. Quaker City (1956), 165 Ohio St. 120, at syllabus. A party is entitled to injunctive relief where "there is no adequate remedy available at law" and where such relief "is necessary to prevent a future wrong that the law cannot." Garono v. State (1988),37 Ohio St.3d 171, 173.
 {¶ 64} "The primary goal of preliminary injunctive relief is to preserve the status quo pending final determination of the matter."Crestmont Cadillac Corp. v. Gen. Motors Corp., 8th Dist. No. 83000,2004-Ohio-488, at ¶ 26. To be entitled to a preliminary injunction, the moving party must establish, by clear and convincing evidence, that (1) there is a substantial likelihood of ultimately prevailing on the merits, (2) irreparable injury will occur if the injunction is not granted, (3) the rights of third parties will not be harmed if the injunction is granted, and (4) the injunction will serve the public interest. Miller v. Miller, 11th Dist. No. 2004-T-0150, 2005-Ohio-5120, at ¶ 10 (citation omitted); Procter Gamble Co. v. Stoneham (2000),140 Ohio App.3d 260, 267.
 {¶ 65} The requirements for a permanent injunction are essentially the same as those for a preliminary injunction, "except instead of the plaintiff proving a `substantial likelihood' of prevailing on the merits, the plaintiff must prove that he has prevailed on the merits."Miller, 2005-Ohio-5120, at ¶ 11 (emphasis sic). *Page 18 
 {¶ 66} Given the facts and circumstances of the present case, the trial court acted within its descretion by denying the plaintiffs' claims for preliminary injunctive relief. As noted above, genuine issues of material fact exist whether the defendants have done what is reasonably necessary to prevent recurrent flooding at P M Estates. It is not clear that the plaintiffs have a substantial likelihood of ultimately prevailing on the merits. The plaintiffs' injunctive claims reflect what the plaintiffs consider reasonably necessary to comply with R.C. 3733.10(A), such as replacing the culvert bridge with another type of bridge and removing homes from the flood plain. It has not yet been established that these measures would solve the problem of recurrent flooding. Nor has it been established that these measures constitute the only reasonable or effective ways of complying with the statute.
 {¶ 67} Since plaintiffs' entitlement to permanent injunctive relief is dependent upon a determination of the final merits of the issues raised in the first assignment of error, this issue is not ready for determination.[3] Cabot Corp. v. King (N.D.Ohio 1992),790 F.Supp. 153, 156 ("[t]he Court's preliminary findings are not entitled to a preclusive effect in the event the case is tried to a fact-finder at a later date, at which time the ultimate fact-finder may reach a different conclusion"); Lamberjack v. Turtle Creek Extension Water Sys. Assn. (May 29, 1992), 6th Dist. No. 91OT023, 1992 Ohio App. LEXIS 2674, at *10 ("the denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy, is not conclusive on the court on a subsequent hearing on a motion for summary judgment, and concludes no rights of the parties") (citation omitted). If it is ultimately determined that the defendants are in violation of R.C. 3733.10(A), the trial court may consider whether the plaintiffs are *Page 19 
entitled to injunctive relief "to prevent the recurrence of conduct" contributing to the violation.
 {¶ 68} The second assignment of error is without merit with respect to the plaintiffs' claims for a preliminary injunction, but with merit with respect to the claims for a permanent injunction.
 {¶ 69} In their third assignment of error, plaintiffs maintain the trial court erred in granting summary judgment on their claims that the defendants violated their duty, under R.C. 3733.10(A)(2) and (3), to maintain the premises "in a fit and habitable condition" and to maintain common areas "in a safe and sanitary condition."
 {¶ 70} The plaintiffs allege in their brief that "flood waters rendered homes and common areas unfit for human habitation for weeks at a time," noting in particular blocked roadways, inundated lots, debris, and raw sewage carried by the floodwaters. These conditions are the direct result of flooding at P M Estates, particularly the extraordinary flood of July 2003. Accordingly, the plaintiffs have raised a genuine issue of material fact as to whether the defendants breached their duty to maintain the premises "in a fit and habitable condition" and to maintain common areas "in a safe and sanitary condition."
 {¶ 71} The third assignment of error is with merit.
 {¶ 72} In their fourth assignment of error, the plaintiffs maintain the trial court erred in granting summary on their claim that the defendants failed to notify the licensor, i.e. the Portage County Health Department, within two days of the occurrence of a flood even when "a flood event affects a manufactured home park located in a one hundred year flood plain." Ohio Adm. Code 3701-27-07.1(A)(1).
 {¶ 73} The defendants assert there is no evidence that they have violated their duty to notify the Health Department within two days of any flood event. The plaintiffs *Page 20 
have not identified evidence to rebut this assertion. The fourth assignment of error is without merit.
 {¶ 74} In their fifth assignment of error, the plaintiffs maintain the trial court erred in granting summary on their claim that the defendants failed to provide the Health Department with the "elevations * * * of the one hundred year flood plain," as required by Ohio Adm. Code 3701-27-07(B)(2).
 {¶ 75} The trial court determined the defendants submitted the information required, the Department of Health was satisfied with their submission, and that the Department was the competent authority to determine the sufficiency of the information submitted. The defendants presented evidence that a survey of base flood elevations is the responsibility of the federal government and that the determination of these elevations by a private party is a practical impossibility. The defendants also presented evidence that the Department of Health understood the situations and was satisfied with the defendants' efforts to provide information.
 {¶ 76} The plaintiffs have not identified evidence contradicting the evidence presented by the defendants.
 {¶ 77} The fifth assignment of error is without merit.
 {¶ 78} In their sixth assignment of error, the plaintiffs assert the trial court erred in granting summary judgment on their claims of fraudulent concealment.
 {¶ 79} The elements of a claim for fraudulent concealment/misrepresentation are as follows: "(1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately *Page 21 
caused by that reliance." States v. Wing, 11th Dist. No. 2005-T-0145,2006-Ohio-4423, at ¶ 25 (citation omitted).
 {¶ 80} A claim for fraud may be defeated under the doctrine of caveat emptor, where (1) the defective condition is open to observation or is "discoverable upon reasonable inspection," (2) the purchaser has had an opportunity to conduct a reasonable inspection, and (3) there has been no active fraud by the vendor. Laymen v. Binns (1988),35 Ohio St.3d 176, at syllabus.
 {¶ 81} The plaintiffs maintain the defendants concealed the fact that the properties leased were subject to recurrent flooding and/or were located within a flood plain. The defendants counter that the existence of the creek was open to observation and the fact that the park is located within a flood plain is a matter of public record and, thus, discoverable upon inspection. The defendants also assert that the plaintiffs leased their premises, according to the Park Agreement, "in the condition that I [the lessor] have seen," i.e. "as is." Such a clause in a real estate contract places the burden upon the lessor to discover defects in the property and "relieves the seller of any duty to disclose." Brewer v. Brothers (1992), 82 Ohio App.3d 148, 151;Kimball v. Duy, 11th Dist. No. 2002-L-046, 2002-Ohio-7279, at ¶ 19 ("[a]n `as is' clause in a real estate agreement relieves the seller from the duty to disclose latent defects") (citation omitted).
 {¶ 82} Initially, we note that a manufactured park operator may not avoid the statutory duties imposed by R.C. 3733.10(A) by the inclusion of an "as is" in the lease agreement. "No provision of sections 3733.09
to 3733.20 of the Revised Code may be modified or waived by any oral or written agreement," except that "[t]he park operator may agree to assume responsibility for fulfilling any duty or obligation imposed on a resident by section 3733.101 [3733.10.1] of the Revised Code." R.C. 3733.15(A) and *Page 22 
(F). Cf. Rex Hill, Inc. v. Cherry (May 29, 1991), 9th Dist. No. 2588, 1991 Ohio App. LEXIS 2494, at *5 ("[appellant's rule requiring its tenants to maintain the lateral sewer lines is an improper abdication of a park operator's legal obligation to maintain good and safe septic systems pursuant to R.C. 3733.10(A)(4)"). Thus, the issue of whether the recurrent flooding of Mahoning Creek is a latent defect has no bearing on the defendants' liability under R.C. 3733.10.
 {¶ 83} In the present case, there is no evidence of active concealment by the defendants. Any liability on the part of the defendants rests, therefore, on their failure to disclose information regarding the tendency of lots within the flood plain to be subject to flooding. The fact that certain lots within P M Estates are situated in a flood plain and/or subject to recurrent flooding is a material fact of importance to anyone who contemplates leasing those lots in order to establish a home. Thus, the defendants were under a duty to disclose this fact.
 {¶ 84} Nor can it be said, as a matter of law, that the fact that certain lots are situated in a flood plain and/or subject to recurrent flooding is discoverable upon reasonable inspection. The fact that property is located near a water course does not, without more, put a prospective buyer or lessor of the property on notice that it is subject to recurrent flooding.
 {¶ 85} The defendants argue the fact that P M Estates is located within a hundred year flood plain is a matter of public record which the plaintiffs could reasonably be expected to discover. Ruggles v. RussellRealtors, 9th Dist. No. 03CA008411, 2004-Ohio-4580, at ¶ 12-13
(affirming grant of summary judgment where the fact that the property in question was located in an "area of special flood hazard" could have been discovered by the examination of FEMA flood hazard maps which are public records); Ohio Plaza Assoc, Inc. v. Hillsboro Assoc. (June 29, 1998), 4th Dist. *Page 23 
No. 96CA898, 1998 Ohio App. LEXIS 2977, at *32-*36 (approving jury instructions that a buyer may not "rely on the alleged concealment of material facts," such as flood plain restrictions, by the seller, where such restrictions are a matter of public record, i.e. the property is located in a federally-identified flood prone area). We disagree.
 {¶ 86} There is no evidence that the location of property within a federally determined flood plain is readily available to a prospective lessor or that this is the sort of information a lessor would typically investigate. See Chapman v. Hosek (Ill.App. 1985), 475 N.E.2d 593, 599
("[although some information was available to the public [regarding flooding] in the form of commissioned reports and maps, it was not tantamount to a public law, nor do we believe that it was the type of information an average prospective buyer would research if given no indication whatsoever that flooding was a problem"). In the present case, the defendants did not learn that their property was located on a hundred year flood plain until 2001, several years after it is alleged that recurrent flooding became a problem.
 {¶ 87} Finally, the mere fact of P M Estates' location within a flood plain does not apprise lessors of circumstances aggravating the effect of flood events or making flood events more likely, such as the culvert bridge, the accumulation of sediment in Mahoning Creek, or the existence of a wetland downstream. Thus, under the facts of this case, a genuine issue of material facts exists whether the defendants fraudulently concealed the fact that certain lots were subject to recurrent flooding by Mahoning Creek. Butternut Constr. Co. v. SilverCreek Inc. (July 21, 1980), 11th Dist. No. 832, 1980 Ohio App. LEXIS 13214, at *6 (action for fraudulent concealment exists where seller was aware of a flooding problem, "of which the plaintiff[-developer] could not have learned by normal inspection," and failed to disclose this fact to plaintiff).
 {¶ 88} The sixth assignment of error is with merit. *Page 24 
 {¶ 89} In their seventh and final assignment of error, the plaintiffs claim the trial court erred in granting summary judgment on their claims for punitive damages. The Ohio Supreme Court has held that "actual malice" is "necessary for an award of punitive damages." Preston v.Murty (1987), 32 Ohio St.3d 334, at syllabus; cf. R.C. 2315.21(C)(1) (before punitive damages may be awarded, "[t]he actions or omissions of that defendant [must] demonstrate malice or aggravated or egregious fraud").[4] Actual malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."
 {¶ 90} Plaintiffs argue that, construing the evidence in the record in their favor, the defendants acted in "bad faith" in their efforts to resolve the problem of flooding. Plaintiffs claim that they allowed the culvert bridge to remain despite the knowledge that it aggravated the effects of flooding, they refused to relocate homes affected by the flooding, they refused to compensate victims for flood damage, and they continued to issue citations against homeowners for conditions created by the flooding. Accepting these allegations as true, the plaintiffs have demonstrated the existence of a genuine issue of material fact regarding the actual malice necessary to support a claim for punitive damages.
 {¶ 91} There is evidence in the record to support the plaintiffs' allegations. The defendants were put on notice that the culvert bridge may have been contributing to the recurrent flooding of Mahoning Creek as early as 1993, through the lawsuit filed by Bragg, and through complaints raised by park residents. There is also evidence to *Page 25 
support the plaintiffs' claims, as discussed under the first, third and sixth assignments of error, that the recurrent flooding posed a threat to the rights and safety of park residents and that the defendants failed to disclose their knowledge of the problem from lessors of lots affected by the flooding. Heiner v. Kelley, 4th Dist. No. 98CA7, 1999 Ohio App. LEXIS 3570, at *23 (where defendants were aware that flooding was a problem and aggravated the effects of the flooding by installing an improperly sized culvert, "reasonable minds could differ as to whether the [defendants] acted with a conscious disregard for the rights and safety of other persons that had a great probability of causing substantial harm"). Preston,32 Ohio St.3d at 336.
 {¶ 92} The seventh assignment of error is with merit.
 {¶ 93} For the forgoing reasons, the judgment of the Portage County Court of Common Pleas is reversed with respect to the individual plaintiffs' claims for compensatory damages based on alleged violations of R.C. 3733.10(A)/Adm. Code 3701-27-07(A), the class representative plaintiffs' claims for loss of use/loss of enjoyment damages based on alleged violations of R.C. 3733.10(A)/Adm. Code 3701-27-07(A), the class representative plaintiffs' claims for permanent injunction based on alleged violations of R.C. 3733.10(A)/Adm. Code 3701-27-07(A), and the plaintiffs' claims for fraudulent concealment and punitive damages. The trial court's grant of summary judgment in favor of defendant, Carol Foster, is affirmed as to all claims raised by the plaintiffs. In all other respects, the judgment of the lower court is affirmed. This matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellees.
MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] The language in R.C. 5321.04, governing landlord-tenant relations, is virtually identical to the language contained in the relevant provisions of R.C. 3733.10, governing landlord tenant relations in the context of a manufactured home park, a fact noted by the Ohio Supreme Court in Schwartz, 22 Ohio St.3d at 17-18 ("all but one of the R.C. Chapter 5321 provisions have a `sister' provision in R.C. Chapter 3733") (emphasis sic).
[2] For example, the difference in the top width of a hundred year flood event under existing conditions and the top width of a hundred year flood event if the culvert bridge were removed is only 24 feet. In the context of a more common two year flood event, the difference in top width increases to 177 feet.
[3] To the extent that plaintiffs' claims for injunctive relief are premised on violations of R.C. 3733.10.(A)(2) and (3) and/or Adm. Code 3701-27-07(B)(2) and 3701-27-07.1, plaintiffs' claims must fail since, as explained below, we affirm the trial court's judgment as to the violation of these provisions.
[4] The current version of R.C. 2315.21 became effective on April 7, 2005, and has not been held to apply retroactively. Kramer Consulting,Inc. v. McCarthy (S.D.Ohio 2006), Case No. C2-02-116, 2006 U.S. Dist. LEXIS 12857, at *19-*21. *Page 1