*Wright, J.,
delivered the opinion of the court:
The real questions' to be decided are, what is the meaning of *397 tbe general clause in this policy of insurance, and what constitutes such negligence in the navigators as will excuse the insurer?1
The meaning of the general clause in marine policies, by which insurers undertake to indemnify for damage resulting from all other perils, losses, and misfortunes, or against any peril whatever, has been fixed by judicial construction. These terms are used in reference to established rules of law, and must be expounded by those rules. Grim v. Phenixon & Co., 13 Johns. 460. All the perils assumed in the policy are subject to one limitation : that although the loss be directly occasioned by the peril insured against, yet if that peril, in causing the loss, is occasioned by conduct of the assured or his agents, which are not insured against, .the insurer is not liable. Eor instance, if the insurer take upon himself the risk of the sea, but not of the negligence or misconduct ol the agents to whom the insurer intrusts the property, and it is sunk by the negligence or misconduct of such .agent, the insurers are not answerable for the loss. It is esteemed .certain that no underwriter has ever been held, under any contract of insurance, in whatever form, to be answerable for losses directly and evidently occasioned by the fault of the assured himself; and no doctrine is better settled than that the insurer is not liable, under the common clause of the policy, for losses resulting from the negligenco of agents employed by the insured. Phil. Ins. 224;. 14 East, 482; 8 Mass. 321; 2 New R. 336; 9 Johns. 21. In all such cases the-insured is held in law impliedly to warrant that those persons he employs shall be careful and diligent, and that everything shall be done, to prevent loss, within the reach of ordinary human agency. This principle pervades the whole subject of marine insurance; and if loss happen through the want of care and dili-• gence, it is held not to be within the intention of the parties to-the contract that the insurer shall be accountable. 8 Mass. 322; Phil. Ins. 156; 2 Johns. Cas. 180; 1 Johns. 460; 5 Mass. 1; 7 Term, 505; 5 B. & P. 339.
*Are the master and mariners the agent of the assured or the insurer ? The owner is the agent for the shipper for transporting the goods, and employs, in the conduct of the business, other agents, the masters and mariners, for whose conduct in that employment he is accountable to the shipper. Marsh. Ins. 225. The captain and mariners navigating vessels in which insured property is laden are, in legal contemplation, the agents of the assured in- *398 reference to the goods insured. They are liable to their immediate employers for their negligence or misconduct, and the owner is liable to the shipper for any loss resulting therefrom as common carriers. Phil. Ins. 225; Marsh. 241; 8 Mass. 321; 13 Johns. 459; 2 Wend. 327; Story on Bail 323; 2 Kent Com. 472.
The captain and crew of the boats on which this insured corn was laden were bound to the use of ordinary diligence in its preservation. The establishment of that fact is essential to a recovery against the insurer. Does the case made exhibit the use of such diligence? The place where the boats were made fast being, ■apparently, a safe one, all hands went to rest, leaving no watch. Owing to some cause not known one of the boats sprung a leak in the night, and when the hands awakened in the morning, she was so far gone that they could not discover the cause, and went down so quick as to render their escape difficult. If this boat had been run foul of, or wrecked by the collision of any other body with her, the shock would probably have awakened the crew; if, owing to the fall of the water, she settled upon a snag and bilged, in all probability the cause would have been discovered. The cause of the disaster, whatever it was, operated silently and without violence upon the boat, and must have progressed gradually. The' mere statement of such a cause indicated as the course of diligence .and common prudence, that a watch should be kept up. The earlier promises to keep safely, and is bound that a safe and secure place is selected for landing; that the crew is competent; and that they will be diligent and careful in guarding and protecting the vessel and freight from accident. The common law rule determines all these things negligence which do not proceed from the enemies of the state or the *aet of God. These latter are technical terms, the meaning of which is settled by repeated judicial decisions. Acts denominated acts of God-are natural and unavoidable ones. If proper care and diligence would ■ have avoided the act, it is not excusable as the act of God. 8 Serg. & R. 533; 2 Wend. 327; Story on Bail. 323.
At the trial the court refused to instruct the jury that the opiis•sion to keep a waking watch on the boat was itself an act of negligence, but did instruct them that the keeping such a watch was not indispensable to the plaintiff’s right to recover. Cases upon policies of insurance are new to the country; but few have ever .been brought to trial in this state, and we are pleased to have an *399 opportunity to re-examine decisions made upon the circuit in the hurry of a trial before a jury. Upon re-examination and reflection in this case, we are satisfied that neither the charge the court was asked by the defendants to give to the jury, nor that actually given, in the terms asked or given, were in strict accordance with law. It should have been left to the jury to ascertain, as a fact, whether the loss resulted from the negligence of the hands, and the usage of the river as to the keeping watch might have been proven and submitted to them. Although we are not able to say precisely what influence the charge of the court may have exerted upon the finding of the jury, we feel disposed to grant a new trial, to afford opportunity for a more careful investigation.
New trial ordered, costs to abide the event.