[Cite as *Reed v. Ohio Dept. of Transp.*, 2012-Ohio-1244.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MICHAEL REED, Exec., etc.

      Plaintiff

      v.

OHIO DEPARTMENT OF TRANSPORTATION

      Defendant

Case No. 2010-02065

Judge Clark B. Weaver Sr.
Magistrate Anderson M. Renick

## DECISION OF THE MAGISTRATE

{¶1} Plaintiff[1] brings this action for wrongful death against defendant, Ohio Department of Transportation (ODOT), on behalf of himself and the heirs of decedent, Traci Reed. Plaintiff also brings an action for negligence on behalf of his minor son, Conner Reed. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} Traci and plaintiff were married in 1990, and the couple had two children, Samantha and Conner. On December 26, 2008, plaintiff drove with his children to Traci's office, where the four proceeded to travel to Morgan County to celebrate Christmas. Afterward, they returned to Traci's office to retrieve her car. Traci drove her vehicle, with Conner in the backseat, and followed plaintiff and Samantha toward their home.

{¶3} The two vehicles traveled northbound on Interstate 70 to State Route 83 (SR 83), a two-lane road with a 55 mile per hour speed limit. Between Hansel Road and Stoney Point Road, near mile marker 7.6 in Muskingum County, plaintiff glanced in

his rearview mirror and noticed the headlights on Traci's vehicle "flickered." He continued to check the rearview mirror, and when he did not see her vehicle behind him, he assumed that she had taken a shortcut to their home. After plaintiff and Samantha arrived at home and Traci and Conner were not there, they returned to SR 83 where they came upon emergency vehicles and Traci's car on the edge of the road. The troopers informed plaintiff that Traci had died and that Conner had been transported to a local hospital. Plaintiff was taken to the hospital and Conner was later transferred to Children's Hospital for his head injuries.

{¶4} Ohio State Highway Patrol Trooper Todd Henry responded to the scene of the accident around 7:45 p.m. on December 26, 2008. He testified that when he arrived, a fallen tree was blocking both the north and south bound lanes of SR 83 and that Traci's vehicle was north of the tree, off the west side of the road. Henry stated that SR 83 remained closed until 10:00 p.m. while ODOT workers cut up the tree that was blocking the road. He took photographs and measurements at the scene and noted in the traffic crash report that there was no evidence of braking before the accident. He also wrote in the traffic crash report that "[t]here was silver paint chips and glass fragments in part of the tree that was on the roadway. This confirms that [Traci's vehicle] was within the northbound lane and that the tree was falling as contact was made." (Joint Exhibit 1.)

{¶5} Plaintiff testified that he is very familiar with this portion of SR 83 between Hansel and Stoney Point Roads. He has lived approximately two miles from SR 83 for ten years and has driven on SR 83 daily during that time. Plaintiff testified that the photographs contained in Plaintiff's Exhibit 3A-3I fairly and accurately depict SR 83 in the fall of 2008. He acknowledged that the tree that fell on December 26, 2008, had stood with a substantial "lean" over the roadway for years before the accident. Plaintiff recalled that in 2007 and 2008 other trees had fallen in the embankment. Further, he

---

[1]As used herein, "plaintiff" shall refer to Michael Reed.

stated that the tree had dead limbs. (Plaintiff's Exhibit 3B.) He admitted, however, that he never complained to ODOT about the tree. Plaintiff testified that he assumed that ODOT knew about the condition because road crews maintained the area throughout the years.

{¶6} Traci's brother-in-law, Allen Fuller, testified that his family was visiting for Christmas at the time of the accident and that on January 2, 2009, he went to the accident scene to take photographs and measurements. (Plaintiff's Exhibits 5A-5V.)

{¶7} In order for plaintiff to prevail upon his claim of negligence and wrongful death predicated upon negligence, he must prove by a preponderance of the evidence that defendant owed him and decedent a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries and decedent's death. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶8, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77; *Galay v. Dept. of Transp.,* Franklin App. No. 05AP-383, 2006-Ohio-4113, ¶7.

{¶8} ODOT has a general duty to maintain its highways in a reasonably safe condition for the traveling public. *Knickel v. Dept. of Transp.* (1976), 49 Ohio App.2d 335. However, ODOT is not an insurer of the safety of its highways. See *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App.3d 723. ODOT may be held liable for damage caused by defects, or dangerous conditions, on state highways where it has notice of the condition, either actual or constructive. *McClellan v. Ohio Dept. of Transp.* (1986), 34 Ohio App.3d 247, paragraph one of the syllabus. "Actual notice exists where, from competent evidence, the trier of fact can conclude the pertinent information was personally communicated to, or received by, the party." *Kemer v. Ohio Dept. of Transp.*, Franklin App. No. 09AP-248, 2009-Ohio-5714, ¶21, citing *In re Fahle's Estate* (1950), 90 Ohio App. 195, 197. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice. Id. at ¶24. "In order for there to be constructive notice of a nuisance or defect in the highway, it

must have existed for such length of time as to impute knowledge or notice." *McClellan*, supra, at 250.

{¶9} At the time of the accident, Greg Hartman, now retired, was the ODOT Transportation Manager for the Zanesville garage where he reported to Ray Dailey, the ODOT County Manager. In this position, Hartman testified that his job duties included inspecting state roadways and as such, he drove state roads two to three times per month, including SR 83. He explained that ODOT has a duty to inspect and identify hazardous roadside trees and that in the past, he had borrowed a bucket truck from ODOT's District Five office to remove hazardous trees. Further, he stated that ODOT's right-of-way usually extends 30 feet from the center line of the roadway.

{¶10} He testified that he was very familiar with this stretch of SR 83, that he had seen this tree before December 26, 2008, and that he was aware of the embankment on the east side of the road on which the tree was growing. Further, he stated that he was aware of the significant canopying of this tree and that "it had been this way for years." Hartman testified that the canopy over the roadway concerned him and that he had talked to Dailey about the issue. Hartman stated that there were several leaning trees located on the embankment next to SR 83 between Hansel and Stoney Point Roads, which concerned him for two reasons: that the trees would fall and obstruct the drainage ditch and that the trees would fall on the road.

{¶11} Ray Dailey testified that he has been an ODOT employee for 31 years, and since 2005 he has been employed as County Manager for the Muskingum County garage. The county manager is the top official in the county for ODOT maintenance and he reports to ODOT District Five and ODOT's central office. Dailey testified that he is familiar with SR 83 inasmuch as he lives nearby and has driven the road many times.

{¶12} Dailey stated that he was aware of this tree and the embankment and he knew that the tree canopied over the roadway; however, he testified that he did not recall Hartman's concern about the tree or any discussions that he had with Hartman

concerning the tree. Dailey explained that ODOT is responsible for the right-of-way, which is usually 30 feet from the center line, and that it is ODOT's responsibility to remove hazardous trees.

{¶13} Regarding the issue of notice, Dailey testified that the public can make complaints about road conditions through the Internet or by telephone. He testified that he was aware of no complaints by the public or ODOT staff concerning trees along this area of SR 83. Further, he stated that if a road crew saw a tree or a condition that concerned them, Dailey would expect them to report it. However, he admitted that there is no system to record such communications.

{¶14} Several ODOT employees who worked as highway technicians along SR 83 in 2008 also testified. Brad Wells testified that in 2008, he was employed by ODOT as a highway technician at the Muskingum County garage. As a highway technician, Wells testified that his job duties included pothole patching, "ditching," brush cutting, and tree trimming. He testified that he is familiar with SR 83, and he performed maintenance at mile marker 7.5 and 7.6 in March 2007 and July 2008. (Joint Exhibit 6.) Wells testified that if he saw a hazardous tree, he would either remove the tree or he would report it to the manager.

{¶15} According to Wells, the tree in question, as shown in Plaintiff's Exhibit 3A-3I, was in such a poor condition that he would have recommended to the transportation manager that it be removed. However, Wells testified that he did not recall seeing this tree. Wells acknowledged that he has reported hazardous trees in the past, but he never reported a hazardous tree on SR 83 near mile marker 7.6.

{¶16} Charlee Daniels, a highway technician, testified that she has worked for ODOT for 18 years. Daniels testified that it is a regular part of her job to cut brush and trees, and she has cut down leaning trees in the past. Daniels related that her job duties include looking for defects or hazards around the roadway and that a leaning tree could be a hazard. Daniels testified that she could cut down a hazardous tree if it was located in the right-of-way and that if the tree was too large for her to cut down, she

would notify her supervisor.                    Daniels immediately recognized the stretch of road depicted in Plaintiff's Exhibit 3A-3I because she has performed maintenance in that area.  She testified that the tree shown in Exhibit 3A is the type of tree that would cause concern due to its lean and that she would report it to her supervisor.  Although Daniels had worked in this area of SR 83, she did not remember the particular tree but she acknowledged that she had probably seen the tree before.

{¶17} George Michael Marshall, a highway technician III, testified that he has worked for ODOT for 29 years.  Marshall explained that he had an obligation to report and remove dangerous trees and that he has reported hazardous trees in the past.  He testified that he is familiar with SR 83 and that he worked on maintenance projects in the area in question in March 2007 and July 2008.  (Joint Exhibit 6.)  Marshall testified that if he observed the condition depicted in Plaintiff's Exhibit 3A and 3C, he would report it, but that he did not remember seeing this tree.

{¶18} Defendant presented the testimony of Jeffrey Hill, an ODOT employee of 17 years.  In December 2008, Hill worked for ODOT as a highway technician II.  Hill testified that he was familiar with SR 83 and that he had worked on the roadway as a highway technician doing such jobs as snow and ice removal, filling potholes, and cutting trees.  Hill recalled that he was directed to remove the tree from the road shortly after the accident.  Hill stated that it took him approximately a half hour to cut the tree back to the white line on the edge of the road so that motorists could travel on SR 83.  The following day, he returned to the accident scene and used a backhoe to pull the tree from the root bulb in the embankment and he moved the cut tree over the guardrail on the west side of SR 83.  Hill also testified that he had worked on this area of SR 83 prior to December 26, 2008, and that he had never seen any condition that concerned him; if he had seen something, he would have notified Dailey or Hartman.

{¶19} Several persons who lived near SR 83 testified regarding their recollection of the tree at issue.  Robert Morrow, Larry Wickham, Keith Eubanks, and Mark Morris

each testified that he is familiar with this stretch of SR 83 and that he knows plaintiff. Each recognized the tree depicted in Plaintiff's Exhibits 3A-3I and stated that the pictures fairly and accurately represent the condition. Each witness admitted that he did not report the tree to ODOT, but testified that he thought the tree was noticeable and obvious from the road. Morris and Wickham each testified that the tree had appeared that way for at least one year. Morris testified that he had discussed this tree with his wife and his friends and they all agreed that the tree would fall and "hopefully not hurt anyone." Wickham stated that when traveling northbound on SR 83, the tree "stuck out" and that his wife would see it and comment about it leaning over the road. Eubanks testified that he had talked about the tree in the past and that he was concerned it would fall on the roadway. Morrow testified that the tree in question "caught your eye"; that it had dead limbs in it; that he discussed the tree with his wife; and that he did not report the tree to ODOT because he assumed that ODOT was aware of the tree because it had performed work in the area.

{¶20} According to Wickham, other trees had fallen near mile marker 7.6 of SR 83 before the December 26, 2008 accident and he related that in the spring of 2008, he helped a man replace a tire that was damaged by a tree that had fallen onto the northbound lane of SR 83.

{¶21} Plaintiff presented the expert testimony of Mark Duntemann, an urban forestry consultant who is certified by the International Society of Arboriculture as an arborist. Duntemann testified that he has a bachelor's of science degree in forest resources and a master's degree in forestry. Duntemann testified that since 1988 he has owned Natural Path Urban Forestry Consultants where he spends most of his time evaluating trees for government agencies. He explained that he also conducts workshops on topics such as hazard tree assessments and tree risk management. Duntemann prepared for his testimony by reviewing court documents, photographs, and visiting the accident site. Duntemann visited the accident scene in February 2011, and he confirmed that cut-up tree segments located behind the

guardrail on the west side of SR 83 matched the identifiable remnants of the subject tree. Duntemann testified that the tree was a red oak, approximately 50 years old, and that the tree was planted naturally. He testified that the tree contained "reaction wood," which forms to counter a lean of the tree. Further, Duntemann explained that the pith, the biological center of the tree, was off-center. Duntemann also testified that he examined the tree's roots in the embankment and determined that there was mild to moderate decay.

{¶22} Duntemann testified that, in his opinion, the subject tree was "hazardous" as defined by the International Society of Arboriculture Hazard Rating System based on its potential to fail and the potential to hit a target. Specifically, Duntemann determined that the tree was a hazard based on its significant lean, its location in a sloped embankment with exposed roots, and the visually obvious deadwood in the crown of the tree. He testified that once a tree is "off vertical" with unstable soil, each progressive year increases the risk of failure. He testified that as the tree grew, its center of gravity continued to move over the road. Furthermore, the tree was located on a steep slope or embankment which also compromised the stability of the tree. Duntemann opined that ODOT failed in its duty to remove a hazardous tree which had several significant visual defects. He testified that the tree's defects were readily observable from the roadway and that it was "not a question of if, but a question of when" the tree would fall on to the highway.

{¶23} Defendant presented the testimony of Thomas Davis Sydnor, Ph.D. Dr. Sydnor has been a full-time professor at The Ohio State University since 1984 and he is also a board certified master arborist. In preparing for his testimony, he reviewed photographs of the tree and visited the accident scene in April 2011. Like Duntemann, he stated that the tree was a red oak, approximately 50 years old, and that it grew naturally from an acorn. Dr. Sydnor testified that the tree has a "classic natural lean," due to the fact that the tree was on the edge of the woods and it grew toward the

sunlight. According to Dr. Sydnor, the center of the tree was asymmetric but there was no indication that the tree was dead or distressed. Dr. Sydnor explained that the spacing of the rings in the cut-up segments of the tree showed that the tree was growing normally. Looking at the roots both in the photographs and at the scene, he saw no evidence of decay or distress.

{¶24} Dr. Sydnor opined that the tree falling was "natural, it was not predictable." However, on cross-examination, Dr. Sydnor conceded that the tree's center of gravity was "probably not over the roots." He also conceded that a tree does not have to be dead, decayed, or diseased in order to be a hazard.

{¶25} Plaintiff presented the testimony of Peter Dinan, a registered land surveyor for the state of Ohio since 1967. Dinan testified that he determined the right-of-way along SR 83 and that he had made such a determination many times in the past. To determine the right-of-way, Dinan began by looking at the deed for the property abutting the road, which was referred to as the Mallett property, to determine if there were any state right-of-way monuments on the property. Dinan testified that he then visited the Mallett property and he found eight monuments stating "State of Ohio Right of Way Marker" near the area of the fallen tree; five monuments were located south of the tree and three monuments were located north of the fallen tree. He opined that the monuments are located 30 feet from the center line and that the tree was located within the state right-of-way. (Plaintiff's Exhibits 11 and 12.)

{¶26} Scott Lucas has been employed by ODOT for 18 years. In 2008, he worked as a transportation manager 3 and he has also been the vegetation management coordinator for ODOT since 2002. He explained that vegetation management includes ODOT's maintenance of trees growing along state roadways. In preparing for his testimony, Lucas reviewed the accident report and visited the accident scene with Dr. Sydnor.

{¶27} Lucas also testified that ODOT performs yearly maintenance quality survey inspections on all state roads that are separate from the inspections performed by

county officials. Lucas explained that while this inspection does not specifically include looking for hazardous trees, ODOT employees are trained to identify any hazard they see on the roadway and to report it. Further, he stated that if a roadside tree is determined to be hazardous, defendant is required to remove it.

{¶28} Lucas testified that he authored Chapter 400 of the Maintenance Administration Manual, but that he does not consider himself an expert on hazardous tree analysis. Section 403.2 of the Maintenance Administration Manual refers to an "operational zone" which Lucas testified includes the "safety recovery zone," an area designed for vehicle recovery along the roadway that usually extends 30 feet beyond the white line on divided highways. However, Lucas stated that there was no safety recovery zone in the accident area and that the ODOT manual does not require such in the area of the accident. Lucas explained that there are several listed maintenance requirements for the operational zone, including eliminating hazardous trees and tree canopy. (Joint Exhibit 5.) However, he conceded that even if there is no safety recovery zone, the maintenance requirements still apply as they apply to "vegetation management in general."

{¶29} The court finds the testimony of plaintiff's expert, Duntemann, to be more persuasive than Dr. Sydnor's and that the red oak tree that fell on Traci's vehicle was a hazard to the motoring public. As Duntemann noted, the tree was located on a sloped, rocky embankment with exposed roots and a significant lean which placed its center of gravity over the roadway. Based upon the evidence, the court agrees with Duntemann's determination that it was only a question of when, not if, the tree would fall on the roadway. Indeed, several of defendant's employees testified that the tree at issue was the type of tree that defendant had a duty to either trim or remove.

{¶30} With regard to notice, although Dailey testified that ODOT received no complaints from either its staff or the public regarding the tree, both Hartman and Dailey acknowledged that they were aware that the canopy of the tree extended over the

roadway.   Indeed, Hartman testified that he was concerned about the overhanging canopy and that he had expressed his concern to Dailey.  Although Dailey did not recall such a conversation with Hartman, he conceded that he knew the tree canopied over the roadway.  Based upon the testimony of Hartman and Dailey, the court finds that defendant had actual knowledge of the hazardous condition.

{¶31} Furthermore, the testimony establishes that the tree leaned over SR 83 for at least one year prior to December 26, 2008.  The testimony of ODOT employees establishes that ODOT had performed maintenance work on SR 83 at mile marker 7.5 and 7.6 in the year prior to December 26, 2008.  Dinan testified that the tree was located within the state's right-of-way.  Several ODOT witnesses including Hartman and Dailey testified that ODOT's duty to remove hazardous trees extended to the right-of-way and that ODOT had, in the past, removed trees in the right-of-way.   ODOT employees Daniels and Marshall both testified that they had removed hazardous trees in the past.   Lucas testified that ODOT must eliminate hazardous trees along the roadway, even if a "safety recovery zone" does not exist.

{¶32} Duntemann testified that the tree's defects, including its lean and location on the steep embankment, were visually obvious from the road and Dr. Sydnor conceded that the tree's center of gravity was off center.  Further, the testimony of Morrow, Wickham, Eubanks, and Morris established that they all could observe the tree's condition from the roadway.   Accordingly, the court finds that ODOT had constructive notice of the hazardous tree.  In other words, ODOT knew or should have known that there was both an unreasonable and foreseeable risk that the tree would fall onto the highway.

{¶33} Photographic evidence has established that the tree was clearly a hazard. The court finds that the tree was growing in the steep embankment on SR 83 near the 7.6 mile marker and contained a significant lean over the roadway, as evidenced by the photographs from the fall of 2008.  (Plaintiff's Exhibits 3A-3I.)  On December 26, 2008, it fell onto the road and Traci's vehicle as she drove along SR 83.  The court finds that the

tree in question leaned over the road, that the condition existed for at least one year prior to Traci's accident, that ODOT personnel had performed maintenance in this area of SR 83 in the year before the accident, and that ODOT had constructive knowledge that the tree was hazardous.

{¶34} ODOT argues that the property owner where the tree was located is liable for the tree. "'Although there is no duty imposed upon the owner of property abutting a rural highway to inspect growing trees adjacent thereto or to ascertain defects which may result in injury to a traveler on the highway, an owner having knowledge, actual or constructive, of a patently defective condition of a tree which may result in injury to a traveler must exercise reasonable care to prevent harm to a person lawfully using the highway from the falling of such tree or its branches.'" *Heckert v. Patrick* (1984), 15 Ohio St.3d 402, 405, quoting *Hay v. Norwalk Lodge No. 730, B.P.O.E.* (1951), 92 Ohio App.14, paragraph three of the syllabus. To the extent that ODOT alleges negligence on the part of the property owner, ODOT has failed to present any evidence that the property owner had actual or constructive notice of the condition of the tree.

{¶35} At trial, the court granted defendant leave to amend its answer to assert the defense of "Act of God." If an Act of God is so unusual and overwhelming as to do damage by its own power, without reference to an independent of any negligence by defendant, there is no liability. *Piqua v. Morris* (1918), 98 Ohio St. 42, 49. "The term 'Act of God' in its legal significance, means any irresistible disaster, the result of natural causes, such as earthquakes, violent storms, lightning and unprecedented floods." Id. at 47-48. The responding trooper noted the weather conditions as "fog, smog, smoke" on the traffic crash report (Joint Exhibit 1), but there is no evidence of any "irresistible disaster" on the date of the accident. Hartman testified that he did not remember a windstorm on the night of the accident. Upon review, the court finds that the circumstances leading to the tree's fall were not an "Act of God."

{¶36} Even if there had been an adverse weather condition on the night of the accident, "it has also been the rule of law that, '[i]f proper care and diligence [on a defendant's part] would have avoided the act, it is not excusable as the act of God.'" *Bier v. New Philadelphia* (1984), 11 Ohio St.3d 134, 135, quoting *Lodwicks & Kennedy v. Ohio Ins. Co.* (1832), 5 Ohio 433, 437. The court finds that defendant's failure to exercise proper diligence resulted in the tree falling and it was not excusable as an Act of God.

{¶37} For the foregoing reasons, the court finds that plaintiff has proven by a preponderance of the evidence that defendant breached its duty to properly maintain SR 83, resulting in harm to plaintiff, Conner Reed, and plaintiff's decedent. Accordingly, judgment is recommended in favor of plaintiff.

{¶38} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

cc:

Blair L. Magaziner
R. David McGlade
W. Andrew Joseph
44 South 6th Street
P.O. Box 970
Zanesville, Ohio 43702-0970

William C. Becker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Patrick J. Hart
50 South Main Street, Suite 504
Akron, Ohio 44308

JSO/dms
Filed January 25, 2012
To S.C. reporter March 23, 2012